\*THE UNITED STATES TELEGRAPH COM- **232** PANY *v.* GEORGE GILDERSLEVE.

*Decided June 24th, 1868.*

CONTRACTS ; BREACH ; DAMAGES ; SPECIAL. AGENTS ; AUTHORITY TO SUE IN OWN NAME. TELEGRAPH COMPANIES ; LIABILITY OF ; RIGHT TO RESTRICT ; PRINTED RULES ; NEGLIGENCE. RULES OF COURT ; PRAYERS ; DISCRETION OF COURT BELOW ; NO APPEAL.

Where an agent is interested, as for commissions, or by reason of special property in the subject matter, and the contract in reference thereto, is made in his name, it is perfectly competent for him to sue and maintain an action in his own name as if he were the principal. (*a*)

p. 245

---

(*a*) As to the liabilities of an agent upon his contracts with third

This is so in the case of a factor, or a broker, or a warehouseman, or carrier, an auctioneer, a policy broker, whose name is on the policy, or the captain of a ship for freight.                                                    p. 245

So where a contract is in terms made with an agent personally, he may sue thereon; and if an agent in his own name carry on a business for his principal, and appear to be the proprietor, and sell goods in the trade as such apparent owner, he can sustain an action in his own name for the price.                                             p. 245

. Where a broker sent by telegraph, in his own name, an order for the purchase of gold, on behalf of his principal, and the Telegraph Company failed to transmit the order.   *Held:*

That the broker may sue the telegraph company in his own name, on the contract to transmit the order, and recover the full amount of damages resulting from a breach of the contract.   But that he of course sues and recovers as trustee for his principal.                     p. 246

A telegraph company has the right to protect itself against extraordinary risk and liability, by such rules and regulations as might be required for the purpose.   (*b*)                              p. 246

And a company having adopted rules and regulations as authorized by the Code of Pub. Gen. Laws, Art. 26, sec. 117, one dealing with it is bound to know that the engagements of the company were controlled by them, and in law, engrafts them in his contract, and is bound by them.                                                            p. 247

This is the case whether the dispatch offered for transmission be expressly declared to be subject to the terms and conditions pre-

**233** *scribed or not.   Those dealing with the company must be supposed to know its rules and regulations, and their contracts must be taken to have reference to them, unless otherwise provided by special contract.                                                    p. 247

In the absence of rules and regulations of the defendant's office, it is competent for it to accept terms and conditions proffered with the message.                                                        p. 247

A corporation cannot, by rules and regulations of its own making, protect itself against liability for the consequences of its own wilful misconduct, or gross negligence, or any conduct inconsistent with good faith.                                                            p. 248

Where a telegraph message is not required to be repeated, and there is no special agreement for the insurance of its transmission, the company, though bound to use due diligence, is not bound to use extraordinary care and precaution.                                     p. 248

Having refused to pay the extra charge for repetition or insurance, a party has no right to rely upon the declaration of the company's agent, that the message had gone through, in order to fix liability on the company.                                                  p. 248

parties, as agent for an undisclosed principal, see *Oelrichs v. Ford*, 21 Md. 490, note (*f*).

(*b*)   See *Brehme v. Adams' Express Co.*, 25 Md. 328, note (*a*).

The *onus* of proof was upon the plaintiff to show affirmatively that there had been negligence, or want of good faith, either in dispatching the message or in regard to its delivery.    p. 249

Negligence of the company is the gist of the action, and unless it be established there can be no recovery.    p. 249

A party can only be held responsible for such consequences as may be reasonably supposed to have been in the contemplation of both parties at the time of making the contract, and no consequence which is not the necessary or ordinary result of a breach, can be supposed to have been so contemplated, unless full information be imparted to the party sought to be held liable, at the time of entering into the engagement. (*c*)    p. 249

In a suit by a broker against a telegraph company to recover the damages resulting from the failure to transmit a dispatch containing the following order "*sell fifty (50) gold*," it was proved that the dispatch would be understood among brokers to mean fifty thousand dollars of gold, but it was not shown that the company's agents so understood it. *Held:*

That the nature of this dispatch should have been communicated to the company's agent at the time it was offered to be sent, in order that the company might have observed the precautions necessary to guard itself against the risk; and it was error to instruct the jury that the plaintiff was entitled to recover to the full extent of his loss by the decline in gold.    p. 251

*It was the right of the plaintiff to convert his gold coin **234** into currency, and if he lost an advantage in having it done in consequence of a breach of contract by the defendant, it was a loss for which the former would be entitled to recover damages to the extent of indemnity.    p. 251

Where the court below by its rules has a discretionary power under certain specified circumstances to refuse to entertain prayers offered by either party, its refusal under such circumstances to entertain a prayer, is not the subject of review by this court. (*d*)    p. 252

---

(*c*)  Where one party breaks a contract, the damages which the other ought to receive should be either such as may be fairly and substantially considered as arising naturally, according to the usual course of things, from the breach itself, or such as may be reasonably supposed to have been in the contemplation of both parties at the time the contract was made, as the probable result of the contract; *B. & O. R. R. Co. v. Pumphrey,* 59 Md. 401. And where a contract is made under special circumstances, *known to both parties,* the damages will be according to those special circumstances; see *Maryland Ice Co v. Arctic Ice Machine Co.,* 79 Md. 107; for note on the damages from breach of contracts, see *Abbott v. Gatch,* 13 Md. 315, note (*e*).  See also *Ellicott v. Lamborne,* 2 Md. 131, note (*b*).

(*d*)  See *Lorentz v. Robinson,* 61 Md. 73; *Berry v. Derwart,* 55 Md. 73.

Appeal from the Superior Court of Baltimore City.

This action was brought by the appellee to recover damages for the failure of the appellant to transmit a dispatch ordering a sale of gold. The facts are sufficiently stated in the opinion of the court.

First Exception.—On the evidence, the plaintiff prayed the court to instruct the jury,—That if they believe from the evi-dence in the cause, that the defendant was on the 9th of March, 1865, engaged in the business of telegraphing messages from the City of Baltimore, to the City of New York, and from the City of New York to the City of Baltimore, and of delivering such messages to the persons to whom they were directed in either of said cities respectively; and that on the afternoon of said day the plaintiff, or any one by him authorized to send messages in his name, left at the office of the defendant the message to Dibble & Cambloss, which has been offered in evidence, and that the defendant received said message for the purpose of telegraphing and delivering the same to Dibble & Cambloss, in New York; and if they further believe that on said afternoon of the 9th of March, after the said message was so received by the defendant, the plaintiff called at the office of the defendant to inquire whether such message had been telegraphed as directed, and was told by an employee in the office of the defendant that said message had gone through; and if they further believe that the defendant might, by the exercise of reasonable diligence, have telegraphed said message, and delivered the same to Dibble & Cambloss, on the said afternoon **235** of the 9th of March, and *that if Dibble & Cambloss had received said message on said afternoon, they would have sold fifty thousand dollars of gold for and on account of the plaintiff, at or near the then ruling rate thereof in the City of New York; and if they further believe that said message was never received by Dibble & Cambloss, and that the plaintiff learned on the morning of the 10th of March, 1865, that said message had not been received by Dibble & Cambloss, and on said morning in consequence thereof, telegraphed to Dibble & Cambloss to sell for him $50,000 of gold, and that Dibble & Cambloss did accordingly in compliance with said last mentioned telegram, sell for him fifty thousand dollars of gold, then the plaintiff is entitled to recover the difference, if any, between the price

which the jury may believe Dibble & Cambloss would have sold fifty thousand dollars of gold for, and on account of the plaintiff, if they had received the first mentioned telegram at the time when, by the exercise of reasonable diligence on the part of the defendant, they ought so to have received it, and the price for which they sold fifty thousand dollars of gold for, and on his account, in response to said second telegram.

Whereupon, the defendant also prayed the court to instruct the jury as follows :

1. That the terms and conditions on the back of the paper offered in evidence by the plaintiff, containing the dispatch, entered into and formed a part of the contract between the plaintiff and defendant, and the plaintiff cannot recover in this cause any amount beyond the cost of the message, if the jury shall find that the plaintiff did not direct the same to be repeated, provided, the jury shall find that the said message was dispatched in due course on the line, although the jury may find that the said message was never received by Dibble & Cambloss.

2. That if the jury shall find that the defendant established the rules and regulations contained in the printed form, offered in evidence by the plaintiff, and the plaintiff delivered the *message to the defendant, and the same was not di- **236** rected to be repeated by the plaintiff, and shall find that the message was dispatched in due course, then the plaintiff is not entitled to recover beyond the amount of the cost of such dispatch, even although they may find that said message was not delivered to Dibble & Cambloss.

3. That the plaintiff cannot recover in this case any thing but nominal damages, if they shall find that he has sustained no loss' by reason of the non-delivery of said dispatch, even although they may find that A. B. Patterson, acting by authority of the plaintiff, sent said message, and sustained loss by reason of such failure.

4. That there is no evidence that the plaintiff has sustained any damage in this cause, and the plaintiff is therefore not entitled to recover any thing beyond nominal damages.

5. That if the jury shall believe that the message to Dibble & Cambloss, was intended to direct them to sell gold coin of the United States, and that they failed to make sale of such coin by reason of the failure of the defendant to transmit the mes-

sage, that no loss nor damage could have legally occurred to the plaintiff therefrom.

6. That the defendant is not liable in this action for the non-delivery of the message, if the jury shall find that the defendant, by its agents, used ordinary diligence in attempting to transmit and deliver the said message.

The court thereupon granted the plaintiff's prayer, and the defendant's sixth prayer, but rejected the defendant's first five prayers; to this ruling of the court, the defendant excepted.

Second Exception.—After the ruling of the court in the first exception, and before the argument to the jury was commenced, the defendant prayed the court to instruct the jury—that the burthen of proof is upon the plaintiff to prove want of ordinary diligence and care on the part of the defendant in this case.

But the plaintiff objected, that the defendant had no right, at that stage of the cause, after the jury had been charged by **237** *the court, to offer the prayer, and in support of his objection, produced and relied on the following rules of the Superior Court:

36. After all the testimony intended to be offered by plaintiff and defendant shall have been introduced, the court will expect to be furnished with all the prayers which the parties respectively may propose to found thereon. These prayers shall be argued in connection together, unless otherwise directed by the court; the plaintiff, if he shall have submitted any material proposition not admitted by the defendant, being entitled to open and conclude on the whole. And the court, upon the whole case, will give such instruction as may appear requisite to place the cause fully before the jury.

37. After the jury shall have been so charged or instructed as contemplated by the preceding rule, no additional prayer will be received, nor additional evidence be given to the jury, unless by permission of the court.

The plaintiff having objected to the exception of the prayer, the court, in the exercise of its discretion, rejected it as being too late. To this refusal by the court to receive the prayer, and to give the instruction asked for, the defendant excepted and the verdict and judgment being against him, he appealed.

The cause was argued before Bartol, C. J., Nelson, Brent and Alvey, JJ.

*Levin Gale,* for the appellant:

The rules and regulations of the company exempting it from liability in cases of unrepeated messages, were reasonable and proper, and the company is not liable beyond those regulations. *Birnie v. N. Y. & Wash. Tel. Co.* 18 Md. 341, 357; *Ellis v. Tel. Co.* 13 Allen, 227; *McAndrew v. Tel Co.* 33 E. L. & Eq. 180; Code of Pub. Gen. Laws, Art. 26, secs. 117, 118.

If the plaintiff were not bound by the rules and regulations of the company, he was bound by the terms and conditions *of the paper containing the dispatch, which he delivered **238** to the defendant to be transmitted.

The prayer of the plaintiff was erroneously granted, for the following reasons:

1st. Because " *gold coin* of the *United States* " being the ultimate standard of value, there cannot be lawfully any loss or gain upon any transactions in relation to it.

2nd. The order to Dibble & Cambloss, giving, according to the testimony, a discretion to them to " *sell for cash, or on three days' time, buyers or sellers' option, as in their judgment would be most advantageous,*" was purely speculative and uncertain, and as the dispatch was not received, and their judgment and discretion was not exercised, there was no standard upon which the damages could be ascertained or recovered.

3rd. The message was in such obscure terms that it did not give the defendant information as to the importance of the transaction, but was, on the contrary, calculated to deceive. The defendant is, therefore, not liable for the extraordinary damage claimed. *Lansburger v. Tel Co.* 32 Barb. 530.

4th. The prayer assumes that the plaintiff can recover for losses incurred by Patterson, and not by the plaintiff.

5th. The prayer was calculated to mislead the jury on the subject of due care and diligence.

6th. The prayer was erroneous, in that it did not require the jury to find that the plaintiff or Patterson had gold belonging to plaintiff or Patterson in their hands, at the time when the dispatch in ordinary course would have been received.

The first five prayers offered by the defendant contain the

reverse of the plaintiff's prayer, and are sustained by the authorities relied on to show that the granting of the plaintiff's prayer was erroneous.

The defendant's sixth prayer was granted, but the plaintiff's prayer being granted likewise, the additional prayer by the defendant was asked for in explanation of the law announced by **239** the court, and such prayer should have been *received and granted under the circumstances, especially as the case had not gone to the jury.

*John H. Thomas* and *McHenry Howard,* for the appellee:

Although a Telegraph Company is not, in Maryland, held to the extreme liability of a common carrier, its duties arise out of the public nature of its employment, as well as from contracts, and public policy will not permit such company to provide for exemption from consequences of its own negligence in any part of its undertaking. At all events, such an intention will not be presumed from general words, but requires the clearest language of special contract. *Tel. Co. v. Dryburg,* 35 Pa. St. 302; *Ashmore v. Transp. Co.* 4 Dutcher, 181; *Reno v. Hogan,* 12 B. Monroe, 63; *Steam Nav. Co. v. Bank,* 6 How. 382; *Barney v. Prentiss,* 4 H. & J. 319; Code of Pub. Gen. Laws, Art. 26, secs. 117, 118.

The paper on which the message was written, was a blank of the People's Telegraph Company, used by Dorsey for convenience, as a blank piece of paper, because it happened to be on his desk. The terms and conditions contained on it were not those of the defendant, but those on which a rival company proposed to do business. The fact of the message having been accidentally written on it did not make them a part of the contract between the plaintiff and the defendant.

There is no evidence in the record of any rules and regulations of the appellant limiting its liability. The record contains a blank on which brokers' messages, to be sent by the defendant, were generally written, which is a direction to send the message "subject to conditions annexed," making the conditions part of the contract between the parties, showing that in the absence of a special contract—and here there was none—the liability of the company was not intended to be limited.

The company never attempted, even by special contract, and would not by law be permitted, to exempt itself from *liability for its own negligence. The proof was that **240** the message " had gone through," that is, that it had been received in New York. All danger of accident, mistake or delay incident to the mode of sending it, and which was intended to be guarded against or corrected by repeating the message, had passed. Repeating it would have done no good. The damage was occasioned, not by mistake in the transmission of the message, which might have been discovered and corrected if it had been repeated, but by failure to deliver it. Even if, therefore, there had been, as there was not, proof of the existence of rules and regulations on the part of the company, which were known to the plaintiff, exempting the defendant from liability for accidents or mistakes as to unrepeated messages, it would still have been liable for failing to deliver the message after it was received, which could have resulted from nothing but gross negligence. The proof shows that it was as much a part of the defendant's contract to deliver the message as to send it over the wires. Failure to deliver it was as clearly a breach of duty, resulting from *negligence,* as a failure to send it would have been. The defendant's first and second prayers were therefore properly refused. The plaintiff's prayer, which was granted, requires the jury to find that the defendant " might, by the exercise of reasonable diligence, have telegraphed and delivered the message." The defendant's sixth prayer, which was also granted, instructed them that the defendant was not liable " if it had used ordinary diligence." *Birney v. Tel. Co.* 18 Md. 358; *Tel. Co. v. Dryburg,* 35 Pa. St. 301; *Steam Nav. Co. v. Bank,* 6 How. 382; Redfield on Railways, 273-74, sec. 11; *R. R. Co. v. Baldauf,* 16 Pa. St. 68; *Ellis v. Tel. Co.* 13 Allen, 227; *Barney v. Prentiss,* 4 H. & J. 317.

Although the message was left by Patterson's clerk, it was in the plaintiff's name, and the contract to send and deliver it was therefore with the plaintiff. But even if the plaintiff's *name had not appeared, the order was on his account **241** and responsibility, and he was entitled to sue on the contract growing out of it as the party legally damaged by the failure to perform it. His damage was the difference in the amount for which the gold would have sold if the message had been de-

livered when it ought to have been, and that for which it did sell the next morning. This was the measure of damages properly prescribed by the court's instruction. It was not legally affected by the fact that the plaintiff would have paid this difference, if it had been received, or that he would now pay it if recovered, to Patterson. The instruction required the finding of every fact necessary to the plaintiff's right to recover, and prescribed the proper measure of damages. The granting of the defendant's third and fourth prayers would, therefore, only have misled the jury, and were properly rejected. *York Co. Bank v. Stein,* 24 Md. 447; *Steam Nav. Co. v. Bank,* 6 How. 381; *Ford v. Williams,* 21 How. 288; *Merchants Bank v. Bank of Commerce,* 24 Md. 12.

Courts will not refuse to enforce the claims of a legal plaintiff because he may be, or is, suing for the benefit of someone else. *Ellicott v. Martin,* 6 Md. 516; *Whiteford v. Burckmeyer,* 1 Gill, 145.

If the plaintiff be regarded as Patterson's agent, contracting with the defendant, and carrying on this suit for Patterson's benefit, the agent in whose name a contract is made is competent to sue and recover damages resulting from the breach of the contract, although as between him and his principal the latter is the one who really sustained the damage and will have the benefit of the recovery. *Lapham v. Green,* 9 Vt. 407; Story on Agency, sec. 160, a; *York Co. Bank v. Stein,* 24 Md. 464.

The appellant's fourth prayer was properly rejected for these reasons, and because it was an abstract proposition, and was **242** calculated to mislead the jury. *Augusta Ins. & *Banking Co. v. Abbott,* 12 Md. 348; *Williams v. Woods,* 16 Md. 220, 255; *Cumberland Coal Co. v. Tilghman,* 13 Md. 74.

The buying and selling of gold coin of the United States as an article of merchandise, is not only not in conflict with the laws of the United States, but specially countenanced and provided for by them. Statutes at Large, 1861-2, ch. 45, sec. 1; 1863, ch. 74, sec. 4; 1864, ch. 127; 1864, ch. 209; 1866, ch. 184, sec. 99.

Courts are empowered to make their own reasonable rules for the dispatch of business and regularity in the trial of causes. The rules under which the appellant's additional prayer was refused, are reasonable rules, and the exercise of the discretion

of the court below is not matter for appeal.  *Gist v. Drakely,* 2 Gill, 345, 6; *Hughes v. Jackson,* 12 Md. 461; *Ricketts v. Pendleton,* 14 Md. 330; *Morrison v. Welty,* 18 Md. 169; *Sellers v. Zimmerman,* 18 Md. 255.

Where several instructions are asked, some of which are granted and others refused, if those granted cover the ground sufficiently, the judgment will not be reversed, although a prayer rejected was one proper to be granted.  The prayer of the appellee and the appellant's sixth prayer, which was granted, required the jury to find affirmatively, want of care and diligence, as well as all other facts on which the plaintiff's right to recover depended.  *N. Y. Life Ins. Co. v. Flack,* 3 Md. 355, 356; *Pettigrew v. Barnum,* 11 Md. 434-451; *B. & O. R. R. Co. v. Resley,* 14 Md. 424-444; *Keech v. Balt. & Wash. R. R. Co.* 17 Md. 32-47; *Mut. Safety Ins. Co. v. Cohen,* 3 Gill, 481-2; *Balt. v. Pendtleton,* 15 Md. 17; *Walker v. Rogers,* 24 Md. 247.

Alvey, J., delivered the opinion of the court.

This was an action, *ex contractu,* instituted by the appellee against the appellant, to recover of the latter damages result- *ing from its failure to transmit and deliver a tele- **243** graphic dispatch to certain stock brokers in New York.

The dispatch directed to be transmitted was as follows:

"No. 15.                    Broker's Telegram Line, 4.
                             People's Telegraph Lines,
          No. 23 South street, and Barnum's City Hotel, Balt.

Send the following message, without repeating it, subject to the conditions endorsed on the back.

                         Dated Baltimore, March 9, 1865.
*To Dibble & Cambloss, N. Y.*

    Sell fifty (50) gold.              Words 3, col. 70.
                                  Geo. Gildersleeve."

It is alleged that this dispatch was an order to the brokers in New York, to sell for the appellee fifty thousand dollars of gold, which order the brokers would have obeyed, but the appellant neglected to telegraph such dispatch, whereby the appellee was greatly damaged, by reason of the decline in the market price of gold.  The appellant pleaded, not indebted as

alleged ; with an agreement that such plea should be received, and that all errors in pleading should be mutually waived, and that either party might rely on any claim or defense, to which he or it would be entitled, if specially declared on or pleaded.

At the trial below the appellee offered one prayer to the court, which was granted; and the appellant offered six prayers; of which the first five were rejected, and the sixth was granted. And it was to the granting of the appellee's prayer, and the refusal of those on the part of the appellant, that the first exception was taken.

On this exception, four questions arise:

1. Whether the appellee can maintain this action, and recover more than nominal damages for the default of the appellant.

**244**    *2. Whether the contract for transmission of the message was subject to the terms and conditions printed on the back of the dispatch, or to other similar terms and conditions prescribed by the rules and regulations of the appellant's office.

3. To what extent, if the contract be subject to such terms and conditions, can the appellant claim to be exonerated from liability thereunder.

4. To what measure of damage is the appellant subject, if the contract be broken.

1. It appears that the appellee was a broker in Baltimore, and that Dibble & Cambloss were his correspondents and agents in New York, through whom he was in the habit of buying and selling stocks and gold in the latter city. That A. B. Patterson, also a broker in Baltimore, was appellee's customer, for whom the appellee was in the habit as broker, of buying and selling gold and stock in New York, through the agency of Dibble & Cambloss. That, by arrangement previously made between appellee and Patterson, for the purpose of saving trouble to them both, instead of Patterson being required to give orders to the appellee for such purchases and sales, and the appellee being required to send them to his correspondents, Patterson was authorized to send orders in the appellee's name, and on his responsibility and account, to Dibble & Cambloss, for the purchase or sale of stock or gold; and that, by this arrangement, the appellee was entitled to his commissions on purchases and sales made in compliance with such orders, and the

rights and liabilities of the appellee and Patterson respectively, in reference to the orders so sent, were in all respects the same as if Patterson had given the orders to the appellee, and the latter had transmitted or undertaken to transmit them to Dibble & Cambloss, in his own name; Patterson not being known to, and having no connection with Dibble & Cambloss, except through the appellee. That, under said arrangement, on the 9th March, 1865, at about 3.40 P. M., the message in question, addressed to Dibble & Cambloss, was left by Patterson's direction, at *appellant's office, in Baltimore, and that the appel- **245** lant, by its agents, undertook to send and deliver it to the parties to whom it was addressed. That the message was sent to the office without the knowledge or special direction of the appellee, but that he was soon after informed of it, and fully sanctioned it. The appellee also testified that he was not interested in this transaction, and had not paid any loss to Patterson, and did not consider himself liable to Patterson, unless he recovered in this suit, in which event anything that was recovered was to be paid over to Patterson. It was also proved that appellee had, on the day of the date of the message, $200,000 of gold to his credit with Dibble & Cambloss, and of that sum, as between appellee and Patterson, $95,000 belonged to the latter.

Upon such state of facts, the appellee was clearly the agent of Patterson, and, as such agent, held and controlled the gold of his principal. It was embraced in the appellee's account, and he had credit for it, in the books of his correspondent, and no other person than himself could have withdrawn it or disposed of it. And, apart from the fact that he had a special property or interest in the gold of his principal thus at his disposal, he was beneficially interested, at the time of the order given, to the extent of commissions on the sale. And where an agent is thus interested, as for commissions, or by reason of special property in the subject matter, and the contract, in reference thereto, is made in his name, it is perfectly competent for him to sue and maintain an action in his own name, as if he were the principal. This is so in the case of a factor, or a broker, or a warehouseman, or carrier, or auctioneer, a policy broker whose name is on the policy, or the captain of a ship for freight. So where a contract is in terms, as in this case, made with an agent personally, he may sue thereon; and if an agent in his

own name carry on a business for his principal, and appear to be the proprietor, and sell goods in the trade as such apparent owner, he can sustain an action in his own name for the price.

**246** 1 Chit. Pl. 8; *Joseph v. Knox,* 3 Camp. *320; *Gardiner v. Davis,* 2 C. & P. 49; *Dancer v. Hastings,* 4 Bing. 2. And where A., for his own account and risk, carried on trade in the name of B., it was held, that an action for goods sold, in the course of such trade, was properly brought in the name of B. *Alsop v. Caines,* 10 John. 396. And so again, where goods are consigned by A. to B., the former, in contemplation of law, is the agent of the latter, for the purpose of contracting for the carriage; and where a bill of lading stated that the goods were shipped, and their freight paid by the consignor, it was held to establish a privity of contract between the consignor and ship-owner, which would entitle the former to recover against the latter for non-delivery of the goods; the damages so recovered being held by the plaintiff in trust for the consignee. *Joseph v. Knox,* 3 Camp. 320; Broom on Parties, 49. And if, in the instances mentioned, the agent can sue and recover the full measure of damages, we can see no reason why the appellee, looking to his relation to this transaction, may not recover the full amount of damages resulting from a breach of the contract with the appellant. He, of course, sues and recovers as trustee for his principal. The court below was therefore right in rejecting the appellant's third and fourth prayers, which raised the question of the right of the appellee to recover more than nominal damages.

2. Next, as to what terms and conditions, if any, the contract was subject.

The appellant had a clear right to protect itself against extraordinary risk and liability by such rules and regulations as might be required for the purpose. It would be manifestly unreasonable to hold these telegraph companies liable for every mistake, miscarriage, or accidental delay that may occur in the operation of their lines. From the very nature of the service, while due diligence and good faith may be required at the hands of the company and its agents, accidents, delays and miscarriages may occur that the greatest amount of caution cannot avoid. Hence in England, and in many of the American States,

provision has been made by statute, authorizing *these **247** companies to prescribe rules and regulations whereby they may be protected against extraordinary liability. In this State, by Art. 26, sec. 117, of the Code, while impartiality and good faith are to be observed, the dispatches are to be received and transmitted under such rules and regulations as may be established by the companies. And the appellant, availing itself of this power, appears to have adopted rules and regulations for its protection. This appears from the evidence offered by both appellee and appellant. And the appellant having adopted rules and regulations as authorized by law, according to the decision of this court in *Birney v. N. Y. & Wash. Tel. Co.* 18 Md. 341, the appellee was bound to know that the engagements of the company were controlled by them, and did himself, in law, engraft them in his contract, and is bound by them. This would be the case, whether the dispatch offered for transmission, be expressly declared to be subject to the terms and conditions prescribed or not. Those dealing with the company must be supposed to know its rules and regulations, and their contract must be taken to have reference to them, unless otherwise provided by special contract. In this case, however, the appellee proffered, with the dispatch, his own terms. The dispatch was written on the blank of another company, which happened to be in the possession of Patterson, but the terms and conditions printed on the back of it, and to which the dispatch was already made subject, so far as the question in this case is concerned, were substantially the same, though differing in words, as those of the appellant. And, even in the absnce of rules and regulations of the appellant's office, it was certainly competent for it to accept the terms and conditions proffered with the message. As, however, the terms and conditions of the appellant, and those printed on the back of the dispatch of the appellee, were, so far as the present question is concerned, substantially the same, it is immaterial in what manner the contract became subject to such terms and conditions. It is enough that they were incorporated in it, and are to be taken as forming part of it.

*3. Then, as to the extent that the appellant can claim **248** to be exonerated from liability under such terms and conditions thus incorporated into the contract. And, in reference to this

question, it is to be observed that the message was not to be repeated; nor was there any special agreement for an insurance of its transmission and delivery. It was sent to the office of the appellant to take its turn, and under the terms and conditions to which it was subject, good faith and due diligence in dispatching, transmitting and delivering it, were all that could be required. The appellant could not, by rules and regulations of its own making, protect itself against liability for the consequences of its own willful misconduct, or gross negligence, or any conduct inconsistent with good faith; nor has it attempted, by its rules and regulations, to afford itself such exemption. It was bound to use due diligence, but not to use extraordinary care and precaution. The appellee, by requiring the message to be repeated, could have assured himself of its dispatch and accurate transmission to the other end of the line, if the wires were in working condition; or by special contract for insurance, could have secured himself against all consequences of non-delivery. He did not think proper, however, to adopt such precaution, but chose rather to take the risk of the less expensive terms of sending his message. And, having refused to pay the extra charge for repetition or insurance, we think he had no right to rely upon the declaration of the appellant's agent that the message had gone through, in order to fix liability on the company. *McAndrew v. Tel. Co.,* 33 Eng. L. & Eq. 187.

If, then, the appellant dispatched the appellee's message in due course, and with the ordinary care to secure its safe and correct transmission, and was guilty of no negligence in regard to its delivery to the party to whom it was addressed, the obligation under the contract was performed, and the *onus* of proof was upon the appellee to show affirmatively that there had been **249** negligence, or want of good faith, either in *dispatching the message or in regard to its delivery. *Steam Nav. Co. v. Bank,* 6 How. 384; *Beardslee v. Richardson,* 11 Wend. 25; Story on Bailm. sec. 213. Negligence of the appellant is the gist of this action, and unless it be established, there can be no recovery; and, as the first and second prayers of the appellant were founded upon this assumption, we think, when taken in connection with the sixth prayer, that there was error committed by the court below in refusing to grant them.

4. Lastly, as to the measure of damages, if there be a breach of the contract. This is a subject about which there has been a considerable diversity of opinion, and great want of precision in the attempts to define rules of general application. But, by the latest and best considered cases upon the subject, the rule seems to be now pretty well established, that a party can only be held responsible for such consequences as may be reasonably supposed to have been in the contemplation of both parties at the time of making the contract, and that no consequence, which is not the necessary or ordinary result of a breach, can be supposed to have been so contemplated, unless full information be imparted to the party sought to be held liable at the time of entering into the engagement. This is the rule furnished by the case of *Hadley v. Baxendale,* 9 Exch. 341, 354, and which has been recognized and approved in *Fletcher v. Tayleaur,* 33 Eng. L. & E. 187-191, and other cases, as being in all respects the most correct and precise. The case of *Hadley v. Baxendale* was this: The plaintiffs, owners of a steam mill, broke a shaft, and desiring to have another made, they left the broken shaft with the defendant, a carrier, to take to an engineer to serve as a model for a new one. At the time of making the contract, the defendant's clerk was informed that the mill was stopped, and that the plaintiffs desired the broken shaft to be sent immediately. Its delivery was delayed, however, and the new shaft kept back in consequence. The plaintiffs brought their action for a breach of this contract with the carrier, and they *claimed, as special damages, the loss of profits **250** while the mill was kept idle. But because it was not made to appear that the defendant was informed that the want of the shaft was the only thing that was keeping the mill from operating, it was held that he could not be made responsible to the extent claimed. And the court, in delivering its judgment, said: " We think the proper rule in such a case as the present, is this—where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be, either such as may fairly and substantially be considered as arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at

the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made, were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of a contract under these special circumstances so known and communicated.

But on the other hand, if those special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases, not affected by any special circumstances for such a breach of contract. For, had the special circumstances been known, the parties might have expressly provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them."

The same rule has been adopted, and is now regarded as established in the courts of New York, as will appear from **251** *Griffin v. Colver,* 16 N. Y. 489, and *Landsberger \*v. Tel. Co.* 32 Barb. 530. And, believing it to be obviously just and reasonable, we take it to be the true rule upon the subject. And applying it to this case, the prayer of the appellee, which was granted, is clearly incorrect. For while it was proved that the dispatch in question would be understood among brokers to mean fifty thousand dollars of gold, it was not shown, nor was it put to the jury to find that the appellant's agents so understood it, or whether they understood it at all. " Sell fifty gold," may have been understood in its literal import, if it can be properly said to have any, or was as likely to be taken to mean fifty dollars as fifty thousand dollars, by those not initiated. And if the measure of responsibility at all depends upon a knowledge of the special circumstances of the case, it would certainly follow that the nature of this dispatch should have been communicated to the agent at the time it was offered to be sent, in order that the appellant might have observed the precautions necessary to guard itself against the risk. But without reference to the fact as to whether the appellant had

knowledge of the true meaning and character of the dispatch, and thus enabled to contemplate the consequences of a breach of the contract, the jury were instructed that the appellee was entitled to recover to the full extent of his loss by the decline in gold. In thus instructing the jury, we think the court committed error, and that its ruling should be reversed.

As to the fifth prayer of the appellant, we think the court below was right in rejecting it. It was certainly the right of the appellee to convert his gold coin into currency, and if he lost an advantage in having it done, in consequence of a breach of contract by the appellant, it was a loss for which the former would be entitled to recover damages to the extent of indemnity.

The second bill of exception was taken to the refusal of the court to entertain a prayer, on the part of the appellant, offered after previous prayers had been argued and disposed of, and the jury instructed.

*The rules of court, set out in the record, fully justi- **252** fied the court in refusing to entertain the prayer, under the circumstances, and its ruling in this respect, being in the exercise of its discretion, is not the subject of review by this court.

Differing with the court below in regard to the appellee's prayer, and the first and second prayers of the appellant, we must reverse its judgment.

*Judgment reversed and procedendo awarded.*