Filed June 13, 1888.

———————◆———————

No. 13,734.

HADLEY v. THE WESTERN UNION TELEGRAPH COMPANY.

TELEGRAPH COMPANY.—*Negligence.*—*Statutory Penalty.*—*Special Damages.*— Section 4176, R. S. 1881, relating to telegraph companies, having been repealed by the act of 1885 (Acts of 1885, p. 151), the fixed penalty prescribed therein for a merely negligent breach of duty in the transmission of messages is no longer recoverable; but such companies are still liable under section 4177, and also upon common law principles, for special damages.

SAME.—*Who May Maintain Action.*—It is only the sender of a dispatch who occupies that privity of contract with or relation to the telegraph company which is necessary to the maintenance of a suit for the statutory penalty, and this rule is not changed by the phrase "any party aggrieved," as used in the act of 1885; but as to special damages a different rule prevails, and an action may be maintained therefor by the person to whom the message is sent.

SAME.—*Construction of Statute.*—In the construction of a statute authoriz-

ing the recovery of a penalty, a strict interpretation ought to be given to its provisions, and, in such a case, as in others where the meaning is obscure, a resort may be had to previous legislation on the same subject.

SAME.—*Sale of Cattle.*—*Failure to Deliver Message.* — *Recovery for Loss of Weight.*—Where one has sold cattle for future delivery, at the option of the purchaser, and the latter sends a dispatch notifying him that he will take the cattle in the morning of the next day, in pursuance of a custom among stock dealers to take and weigh cattle at early daylight, which dispatch the telegraph company fails to deliver promptly, whereby the weighing of the cattle is delayed and their weight decreased, the seller may recover for the loss of weight so resulting from the company's negligence.

From the Hendricks Circuit Court.

*E. G. Hogate, R. B. Blake* and *G. C. Harvey,* for appellant.
*J. E. McDonald, J. M. Butler, A. L. Mason, A. H. Snow* and *A. J. Beveridge,* for appellee.

NIBLACK, J.—Henry Hadley brought this action against the Western Union Telegraph Company to recover the statutory penalty, and additional and special damages, for the alleged failure of the company to transmit as well as to deliver a telegraphic message within proper time. The complaint was in two paragraphs.

The first demanded the prescribed penalty of one hundred dollars for a failure to transmit the message with the requisite promptitude, and the second demanded special damages in the sum of five hundred dollars for a failure to deliver the message within time to serve the purposes for which it was intended, alleging the particular facts relied upon to sustain such a demand.

A jury was empanelled to try the cause, and, being instructed so to do, they returned a special verdict, stating the facts as they found them from the evidence.

Hadley thereupon moved for judgment on the first paragraph of the complaint for the sum of $100, and on the second paragraph for the sum of $16.80, the amount of damages conditionally assessed by the jury, but the court over-

ruled his motion, and instead rendered judgment in favor of the telegraph company.

Questions were reserved below, and are again made here, upon the sufficiency of both paragraphs of the complaint, and that of certain paragraphs of the answer, but the real merits of the controversy are better presented by the special verdict. We, therefore, consider it unnecessary to make any formal rulings upon the pleadings.

The special verdict was as follows: "We, the jury, do make and return the following special verdict in this case: On the 14th day of October, 1886, and for a long time prior to that date, and continuously from that time to the present, the defendant, the Western Union Telegraph Company, was, and has been, an electric telegraph company, duly organized as a corporation and engaged in transmitting telegraphic messages for the public for hire. During all that time the defendant was the owner and operator of a line of telegraph wires extending to and through each of the towns of North Salem and Danville, in Hendricks county, in the State of Indiana, in each of which said towns said defendant had a public office for the accommodation of the public in transmitting telegraphic messages. On said 14th day of October, 1886, one Samuel C. Clay placed in the hands of the defendant's agent at said North Salem office, during the usual office hours thereof, a message notifying the plaintiff that said Clay would take and receive certain cattle which he had before that time purchased of the plaintiff, and for the plaintiff to meet him at the pasture early next morning for that purpose, which message was in the words and figures following, to wit:

'NORTH SALEM, INDIANA, Oct. 14th, 1886.
'To *Henry Hadley, Danville, Indiana:*
'Want your cattle in the morning; meet me at pasture.
'S. C. CLAY.'

"That said message the defendant then and there undertook

and agreed to transmit to said Henry Hadley at Danville, Indiana, the said Clay having then and there paid in advance the usual fee, to wit, the sum of twenty-five cents for the transmission of said message, the full amount demanded of him by said agent on that account. Said agent did not transmit, and the agents of the defendant at Danville, Indiana, did not receive said message for the space of one and one-half hours after it was left by said Clay at said defendant's North Salem office for transmission. Said message was received by the defendant's agent at its said Danville office during the defendant's usual office hours at that place, and, although the plaintiff resided within less than one mile of said office, the defendant's agents at said office, in bad faith, refused to deliver said message to the plaintiff for the space of ten hours, although they were, during all that time, present at said office for the purpose of performing such duties. In thus failing and refusing to deliver said message to the plaintiff, after it was received at said Danville office, the defendant and its agents were guilty of partiality, bad faith and discrimination against the plaintiff in this, to wit, that, at the time of sending said message as aforesaid, as well as long before and long after that time, it was the custom and practice at said Danville office of the defendant and its agents to deliver to its patrons at that point, and to the public generally, like messages to that above mentioned during all the like hours and times that said message lay in said Danville office undelivered to said Hadley as aforesaid.

"At the defendant's Danville office, at the time the message in question was sent, and both before and after that time, it was the practice of Horace Goodwin, during all the hours of the night, to receive and transmit messages over the lines of the defendant to its distant offices, and to receive messages over its lines at said Danville office from its offices at distant points, and to receive and collect the tolls and fees for the transmission of such messages, and account to the defendant or its agents.

" On said 14th day of October, 1886, the plaintiff was the owner of a farm near the town of North Salem, on which he was then and there feeding and grazing a large drove of cattle which he had before that time sold to the said Samuel C. Clay, to be delivered between the 14th and 31st days of October, 1886, at the option of said Clay. Said message was designed by said Clay to notify said Hadley that he, said Clay, would weigh and take said cattle on the morning of the 15th of said month, and the defendant, by its agreement to transmit said message as aforesaid, undertook to notify said Hadley of the option of said Clay to take them at that time. Owing to the wrongful and negligent failure of the defendant to deliver said message promptly, and without delay, as above set forth, the plaintiff received no information whatever of said Clay's election to take said cattle as aforesaid, until 7 o'clock A. M. of said 15th day of October, 1886. At that date, as well as long before and after that time, it was the invariable rule and custom among cattle buyers and sellers throughout said county, and in the neighborhood and vicinity of both said offices of the defendant, to take and weigh cattle sold as above mentioned, at an early daylight in the morning of the day named for the delivery. In pursuance of said rule and custom, and the terms of his contract, the said Clay, by his agent, at daylight on the morning of the 15th day of October, 1886, went to the pasture of the said Hadley and took and weighed and drove away said cattle, the said Hadley not being present either in person or by agent. If said Hadley had received said message before the weighing of said cattle, or if he had received any information from any other source, that they were to be so weighed, he would have been present in person to superintend said weighing and delivery. In the process of weighing and taking of said cattle by said Clay, as aforesaid, and without any fault or negligence on the part of said Clay, said cattle were delayed and detained in the public highway for the space of thirty or forty minutes before they were weighed, on account

of the absence of the plaintiff, for whom the agent of said Clay was waiting; by which delay and detention as aforesaid, said cattle were decreased in weight to the amount of four hundred and twenty pounds, and, in value, to the amount of $16.80. If the court, upon the facts set forth in the special verdict, should be of the opinion that the law is with the plaintiff, then we find for the plaintiff, and assess his damages at the sum of $16.80; but if the court should consider that the law is for the defendant, then we find for the defendant."

The act of 1852, section 4176, R. S. 1881, provided that telegraph companies, engaged in telegraphing for the public, should, during the usual office hours, receive dispatches, and, on payment or tender of the usual charge, " transmit the same with impartiality and good faith, and in the order of time in which they are (were) received, under penalty, in case of failure to transmit, or if postponed out of such order, of one hundred dollars, to be recovered by the person whose dispatch is (was) neglected or postponed."

The act of 1885, covering the same subject-matter, is as follows: "Section 1. That every telegraph company with a line of wires wholly or partly within this State, and engaged in doing a general telegraphic business, shall during the usual office hours receive dispatches, whether from other telegraph lines, or other companies, or individuals, and shall, upon the usual terms, transmit the same with impartiality and in good faith, and in the order of time in which they are received, and shall in no manner discriminate in rates charged, or words or figures charged for, or manner or conditions of service, between any of its patrons, but shall serve individuals, corporations and other telegraphic companies with impartiality : *Provided, however,* That arrangements may be made with the publishers of newspapers for transmission of intelligence of general public interest out its order, and that communications for and from officers of justice shall have precedence of all others."

The second section contains kindred provisions concerning telephone companies.

The third section declares that "Any person or company violating any of the provisions of this act shall be liable to any party aggrieved in a penalty of one hundred dollars for each offence, to be recovered in a civil action in any court of competent jurisdiction." Acts of 1885, p. 151.

It was held in the cases of *Western Union Tel. Co.* v. *Steele,* 108 Ind. 163, and *Western Union Tel. Co.* v. *Brown,* 108 Ind. 538, that this act of 1885 repealed section 4176, R. S. 1881, first above referred to, and that telegraph companies are no longer liable to a fixed penalty of one hundred dollars for a merely negligent breach of duty either in the transmission of, or in the failure to transmit, telegraphic messages. This construction of the act of 1885 was reaffirmed in the more recent case of *Western Union Tel. Co.* v. *Swain,* 109 Ind. 405, and is one to which we feel constrained to adhere. Telegraph companies are, nevertheless, liable under section 4177, R. S. 1881, which remains in force, as well as upon the general principles of the common law, for special damages for failure or negligence in receiving, copying, transmitting or delivering dispatches. *Western Union Tel. Co.* v. *Ward,* 23 Ind. 377 (85 Am. Dec. 462); *Western Union Tel. Co.* v. *Meek,* 49 Ind. 53; *Western Union Tel. Co.* v. *Fenton,* 52 Ind. 1; *Western Union Tel. Co.* v. *Ferguson,* 57 Ind. 495; *Western Union Tel. Co.* v. *Lewelling,* 58 Ind. 367; *Western Union Tel. Co.* v. *Lindley,* 62 Ind. 371; *Western Union Tel. Co.* v. *Trissal,* 98 Ind. 566; *Western Union Tel. Co.* v. *McDaniel,* 103 Ind. 294.

So far as we are at present advised, this court has uniformly ruled that it was only the sender of a telegraphic dispatch who could recover the fixed penalty prescribed by section 4176, *supra,* for a violation of its provisions, and, in argument, the correctness of these rulings is conceded. See *Western Union Tel. Co.* v. *Brown, supra.*

But it is now sought to be maintained that, under the act

of 1885, the right to sue for and recover the fixed penalty is not restricted to the sender of the dispatch, but that the phrase " any party aggrieved," is broad enough to include as well the person to whom, or corporation to which, the dispatch is directed, when aggrieved by a non-compliance with the requirements of that act.

In the construction of a statute authorizing the recovery of a penalty, a strict, rather than liberal, interpretation ought to be given to its provisions, and, in such a case, as in others where the meaning is seemingly obscure, a resort may be had to previous legislation on the same subject. *Western Union Tel. Co.* v. *Axtell,* 69 Ind. 199 ; *Western Union Tel. Co.* v. *Roberts,* 87 Ind. 377 ; *Western Union Tel. Co.* v. *Mossler,* 95 Ind. 29.

It is true that the fixed penalty is imposed for the breach of a duty which telegraph companies owe to the public generally, and not as damages for the non-performance of a contract to properly transmit a dispatch. But such a breach of duty can not arise until after a telegraph company has either entered into a contract, or has become obligated to transmit the dispatch.

The generally accepted doctrine, both in this country and in England, has so far been that it is only the sender of a dispatch who occupies that privity of contract or relation with the telegraph company which is necessary to the maintenance of a suit for the statutory penalty. It is to him, and only to him, as the holding has so far generally been, that the company directly assumes the obligation of sending the dispatch in the manner required, and under the restrictions imposed by law. This is well illustrated by the case of *Western Union Tel. Co.* v. *Pendleton,* 95 Ind. 12, and the authorities there cited.

That case has been disapproved by the Supreme Court of the United States in so far as it treats of certain interstate relations in telegraphy, but in all other respects it remains unimpaired.

We do not feel at liberty to hold that this long and well accepted rule of decision has been changed by the act of 1885. It is but reasonable to suppose that if the Legislature had intended to change a rule so well defined and so generally recognized by the courts, it would have done so in terms more direct and more explicit.

The primary object of the first section of the act in question evidently was to protect the interests of the patrons of telegraph companies by preventing, so far as is reasonable, any discrimination between them. It is only those who give business to, and send dispatches over the wires of, a telegraph company that can rightly be called its patrons, within the meaning of the statute. In this view, it is only those entitled to be considered as the patrons of such a company who are authorized to enforce the statutory penalty when it has been incurred.

The person to whom a dispatch is sent can not, therefore, become a " party aggrieved " in the sense contemplated by the act under consideration. Any other construction might result in a multiplicity of suits to recover the same penalty.

The right of Hadley to have judgment for the sum of $16.80, conditionally assessed in his favor by the jury, involves the application of principles not so well defined, and hence the decision of a question not capable, in our view, of so easy a solution.

The English cases deny the right of the person to whom the dispatch is sent to recover damages for default, either in its transmission or its delivery, upon the ground that there is no privity of contract between him and the company. Many of the American cases, however, give a more liberal construction in favor of the person to whom the dispatch is sent, and this more liberal construction has been adopted as the better and more reasonable rule by this court. *Western Union Tel. Co.* v. *Fenton, supra*, is the leading case upon that subject. See, also, the case of *Western Union Tel. Co.*

v. *Pendleton, supra,* and the later case of *Western Union Tel. Co.* v. *McKibben,* 114 Ind. 511.

The rule thus adopted by this court is not expressly based upon that theory, but it receives much support from the equitable doctrine that one person may contract with another in such a way as to inure to the benefit, in whole or in part, of a third person, who may, at his option, enforce so much of the contract as was intended to be for his benefit, or demand compensation for its non-performance.

The circumstances under which a person to whom a dispatch is sent may recover damages for a mistake or default in the transmission of the dispatch, or for an unreasonable delay in its delivery, or for its non-delivery, are various, and are incapable of an exact hypothetical definition applicable alike to all cases that might occur. It may be said generally that the company is only liable for such damages as naturally flow from the breach of duty complained of, or such as may fairly be supposed to have been within the contemplation of the parties as a possible result at the time the dispatch was sent; also, that the damages must result from the default of the company as a proximate cause. In determining what was fairly within the contemplation of the parties when the dispatch was sent, the terms or contents of the dispatch may be taken into consideration. *Bank* v. *Western Union Tel. Co.,* 30 Ohio St. 555; *Mackay* v. *Western Union Tel. Co.,* 16 Nev. 222; *Baldwin* v. *U. S. Tel. Co.,* 45 N. Y. 744; *U. S. Tel. Co.* v. *Gildersleve,* 29 Md. 232; *Beaupre* v. *P. & A. Tel. Co.,* 21 Minn. 155; *Hadley* v. *Baxendale,* 9 Exch. Rep. 341; *Candee* v. *Western Union Tel. Co.,* 34 Wis. 471.

In this case, the terms or contents of the dispatch sent by Clay to Hadley fairly indicated the necessity of its prompt delivery as well as transmission, and were such as to authorize the inference that a delay until the day following would result in confusion and possible, if not probable, injury to one or both parties to the dispatch. While all the circumstances which led to the injury of the cattle were not found

as fully, perhaps, as they might have been, and while the question involved is a fairly debatable one and not free from difficulty, we are inclined to the opinion that the circuit court erred in refusing to render judgment in favor of Hadley for the amount of damages conditionally assessed by the jury, and have accordingly reached that conclusion.

The judgment is reversed, with costs, and the cause is remanded with instructions to the circuit court to render judgment in favor of Hadley for the sum of $16.80 in damages upon the second paragraph of his complaint.

Filed Feb. 28, 1888; petition for a rehearing overruled June 28, 1888.