LUCY A. CAIN et al., *Appellees,* v. THE WESTERN UNION TELEGRAPH COMPANY, *Appellant.*

No. 18,222.

#### SYLLABUS BY THE COURT.

1. DAMAGES—*Failure to Properly Transmit Telegraph Message.* The rules of liability and damages for failure to properly transmit and deliver a telegraph message stated in *Telegraph Co. v. Simpson,* 64 Kan. 309, 67 Pac. 839, are followed

2. —— *Telegram Imparted Notice of its Importance.* A message was delivered to an operator for transmission in the following form:

"Will you give twenty-five dollars per acre for farm; have been offered twenty-four; wire me if you will take that. Will hold till three o'clock."

It is held that the contents of the message imparted notice of the importance and nature of the transaction, and that substantial losses might reasonably be expected from a failure to deliver it.

3. —— *Loss of Sale of Farm—Proper Element of Damages.* Evidence to prove that a sale of the farm to the addressee

would have been made if the message had been delivered without change was admissible in an action against the company to recover damages for failure to so deliver it.

4. ⸺ *Damages — Changing Wording of Telegram.* The proper delivery of the message as written would have resulted in a sale, but the sale was prevented by a change in the concluding sentence so that it read: "Hold till thirtieth." The company is therefore liable for consequential damages.

5. ⸺ *Agent's Commission — Proper Measure of Damages.* The payment of an agent's commission reasonably necessary in effecting the sale of the farm but which would not have been payable if a sale had been made to the addressee, whereby the net amount received for the farm was diminished, may properly be considered as an element of consequential damages.

Appeal from Labette district court. Opinion filed June 7, 1913. Affirmed.

*W. D. Atkinson,* of Parsons, *George H. Fearons,* of New York, N. Y., *Alexander New, Edwin A. Krauthoff,* and *John M. Kennish,* all of Kansas City, Mo., for the appellant.

*Archie D. Neale,* of Chetopa, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This appeal is to determine the measure of damages for failure to correctly transmit a telegraph message upon the following facts: The plaintiffs owned a farm of 640 acres occupied by Mrs. Reeves, their tenant, who had indicated a wish to purchase it. R. R. Cain, one of the plaintiffs, acting for all of them, offered the farm for sale. Mrs. Reeves made an offer for the place which he declined, but upon her request promised to give her the first chance to buy before a sale should be made to any other person. A real-estate agent, having been authorized to find a buyer, communicated to Mr. Cain an offer of $24 per acre for the farm. Thereupon according to his promise to give Mrs. Reeves the first chance to buy it he delivered to

the defendant, at its office in Chetopa, a message, as follows:

"CHETOPA, KANS., 6-28-1910.
"*To Mrs. Lydia Reeves, Parkerville, Kans.*
"Will you give twenty-five dollars per acre for farm; have been offered twenty-four; wire me if you will take that. Will hold till *three o'clock*.                    R. R. CAIN."

Mrs. Reeves received the message on the same day, June 28, a little before noon, but with a change in the concluding sentence thus: "Hold till *thirtieth*." Mrs. Reeves desired to purchase the land and to make a better offer, but understood from the message that she had until the thirtieth day of the month to answer it. She caused a message to be transmitted to Cain on June 29, as follows:

"PARKERVILLE, KANSAS, 6-29-1910.
"*To R. R. Cain, Chetopa, Kansas.*
"Will take farm at that price.       LYDIA REEVES."

After waiting until after three o'clock in the afternoon of June 28, Mr. Cain, having received no word from Mrs. Reeves, made a sale through the agency at $25 per acre. In making this sale the plaintiffs became obligated to pay and did pay their agent a commission of $425, which would have been saved if the sale had been made to Mrs. Reeves, the agent having no part in the negotiations with her. She was able to make the payment and would have taken the farm at the price offered, and it would have been sold to her had not the sale been made through the agent before receiving her message. The plaintiffs seek to recover damages to the amount of the commission paid and the telegraph toll. The defendant offered to repay the toll received and denies any further liability. Four other telegrams had passed through the Chetopa office during the three days preceding June 28, and one on that day between Mr. Cain, his mother, and Taggart, the agent, relative to offers upon the same farm, but the land was not described in any of them.

The measure of damages for failure to correctly

transmit a message by telegraph has been variously stated, and there is some discussion in the brief of a distinction between an action brought upon a breach of the contract and an action to recover damages for a tort in failing to discharge the duty resting upon a telegraph company in such cases. Without considering this supposed distinction, the rule of damages in this case is considered as settled in *Telegraph Co. v. Simpson*, 64 Kan. 309, 67 Pac. 839. It was said:

"The contractual obligation of a telegraph company receiving a dispatch for transmission is clear and undenied. Out of it arise the agreement to transmit correctly and deliver with reasonable promptness the message received, and the liability to pay all proper damages that may arise from its failure so to do. These damages, however, must be proximate, and not remote and speculative. They must be such as arise naturally from the breach of the contract and the probable result of such breach; so that damages resulting from other causes than the negligence of the company in transmitting or delivering may not be considered." (p. 315.)

The only question is whether the payment of the commission can be considered in awarding damages under this rule. Damages arise naturally when they occur as the natural and probable consequence of the act. If a message discloses upon its face sufficient facts to indicate its importance and the probability of damages from failure to transmit it properly it is sufficient. The following quotations state the rule more fully:

"It is not necessary that the company be informed of all the facts and circumstances pertaining to the business transaction about which the message is sent, in order for this rule to hold good. It is enough if there are sufficient facts disclosed by the face of the message to indicate its importance, and the probable consequences of its failure in not being received by the addressee as delivered to the company." (Jones, Telegraph and Telephone Companies, § 536.)

"It does not appear to be necessary that the company should be apprised of details if the purpose of the mes-

sage is made known; they will be liable for the actual
injury which directly results from thwarting that ob-
ject by a negligent performance of their duties, though
there is no mention of facts material to the attainment
of that purpose." (3 Sutherland on Damages, 3d ed.,
§ 969.)

"Although, in the absence of prevailing authority to
the contrary, it would seem just to say that a telegram
may always be presumed to be of importance, and that
the law ought not to sanction negligence on the part
of a telegraph company, in proportion as a message
may appear to be unimportant; yet it is, now settled in
a majority of the courts that only the cost of the mes-
sage can be recovered for failure to transmit a message
promptly and correctly, unless the telegrapher had
notice, from the message itself, or from information
furnished with it, that its nondelivery would probably
be attended with other damages. . . . If the mes-
sage does give such notice, the liability to full compen-
sation for damages accrues, in case of negligence. It
is not necessary that such notice should be full or ex-
plicit. It is sufficient if it gives reasonable warning,
such as would put a prudent person upon diligence."
(2 Shearman & Redfield on the Law of Negligence,
5th ed., § 754.)

These principles are illustrated in many cases.

A purchaser of cattle undertook to notify the owner
of his intention to take them at a certain time. He
delivered the following message to a telegraph com-
pany for transmission: "Want your cattle in the morn-
ing; meet me at pasture." (115 Ind. 193.) The mes-
sage was not delivered to the owner, and the buyer
weighed and drove away the cattle in his absence, but
there was a delay caused by this absence, the cattle
being detained in the highway, causing a shrinkage in
weight. Recovery was allowed for the loss incident to
the decrease in weight. It was held that the company
was liable for damages flowing naturally from the
breach, and it was said:

"In this case, the terms or contents of the dispatch
. . . fairly indicated the necessity of its prompt de-

51—89 KAN.

Cain v. Telegraph Co.

livery as well as transmission, and were such as to authorize the inference that a delay until the day following would result in confusion and possible, if not probable, injury to one or both parties to the dispatch. While all the circumstances which led to the injury of the cattle were not found as fully, perhaps, as they might have been, and while the question involved is a fairly debatable one and not free from difficulty, we are inclined to the opinion that the circuit court erred in refusing to render judgment in favor of Hadley for the amount of damages conditionally assessed by the jury, and have accordingly reached that conclusion." (*Hadley v. The Western Union Telegraph Company,* 115 Ind. 191, 200, 15 N. E. 845.)

A message was delivered for transmission, as follows:

"*R. S. Brooks, Green River, Wyo.*

"Searcy there Monday noon or Tuesday morning sure. Get letters. H. Engenoen wants buy. Meet you. Price eleven.— B. B. Brooks." (26 Utah, 151.)

On the next day the following message was delivered:

"Rush.                    Ogden, Utah, Sept. 24, 1900.

"*R. S. Brooks, Green River, Wyo.*

"Searcy arrives Green River 3 A. M.; did not get anything Idaho.—B. B. Brooks." (p. 151.)

Neither of the messages was delivered to the addressee, R. S. Brooks, in charge of horses, who was waiting for a telegram giving information of the time of the arrival of Searcy, a purchaser of the horses. R. S. Brooks did not meet the intending purchaser because he did not receive the message, and the sale failed. The horses were afterwards sold at a reduced price. The court said:

"It was also claimed by counsel for appellant in his oral argument that there was nothing on the face of the messages that indicated their nature or importance, and that therefore it can not be presumed that appellant or its agents, at the time the messages were received for transmission, had in contemplation the damages that would necessarily and directly result to respondents because of any failure or neglect to

promptly transmit and deliver them. In other words, that appellant, when it received the messages, was not advised that they referred to the 'sale of a band of horses, and in case of nondelivery of the message the sale would not take place, and that damages would arise therefrom. The rule contended for by counsel for appellant has been followed by many of the courts of last resort. . . . But the authorities hold, almost uniformly, that it is sufficient to create a liability on the part of a company for all damages directly and proximately resulting from the negligent acts of its agents in failing to transmit a message in the form in which it is delivered, or in omitting to send it at all, provided the message discloses enough of its nature and importance to put an ordinary and prudent person upon inquiry." (*Brooks & Son v. Western Union Tel. Co.*, 26 Utah, 147, 153, 72 Pac. 499.)

In *Garrett v. W. U. Tel. Co.*, 83 Iowa, 257, 49 N. W., 88, the following message was considered:

"*To Gregory, Cooley & Co., U. S. Yards, Chicago:*

"Send me market Kansas City, to-morrow and next day.— A. M. GARRETT."

The court said that the message did:

"In effect, advise the agent that he was on his way to Kansas City, and that he desired market reports to be sent to him at that place. The evidence shows that the plaintiff had sent and received a great many messages from that office. We think it was, to say the least, a proper question to submit to the jury to determine whether, in view of all the facts and circumstances surrounding the parties, the defendant ought to be charged with knowledge that the plaintiff intended to act upon the result of his message in buying or selling cattle, and that it pertained to transactions which might involve loss; and, as it appeared that by the arrangement between the plaintiff and Gregory, Cooley & Co., that no answer to the message was equivalent to an answer that the market was unchanged, the question of substantial damages should have been submitted to the jury." (p. 263.)

A message answering an inquiry for terms on which apples would be sold was written: "One dollar fifty, freight thirteen cents." In transmission the word

"fifty" was omitted. The claim of the company that it was not liable because it had no knowledge of the purpose of the sender was not sustained. The court said:

"This claim is not tenable. The message upon its face plainly indicated a business transaction; and that it was important also appeared upon the face of the message. It was not only sent by telegraph, but the message itself bore an injunction to the receivers to 'Answer quick.'" (*Dixon v. Western Union Tel. Co.,* 3 N. Y. Supr. Ct., App. Div., 60, 65.)

A message was written and delivered to the company in these words: "Will give One Thirty for mules answer quick." The words "Will give One Thirty" were changed in transmission thus: "Will leave one Thirty." The court said:

"Where the message shows on its face, as did the one delivered by Pendleton to the defendant, that a business transaction is contemplated and that negligence in its transmission may reasonably be attended with loss, the plaintiff is entitled to recover all damages which result to him by reason of defendant delivering to him a spurious telegram, on the principle that in actions *ex delicto* the plaintiff is entitled to recover such damages as naturally flow from defendant's negligence. In other words, the plaintiff has a right to be placed in the same position he would have been in had defendant's agents correctly transmitted the telegram." (*McCarty v. W. U. Telegraph Co.,* 116 Mo. App. 441, 446, 91 S. W. 976.)

Many other illustrative cases are collated in a note in 117 Am. St. Rep. 286. Others are cited with comments in Joyce on Electric Law, § 953. A valuable discussion will also be found in *Postal Telegraph Cable Co. v. Lathrop et al.,* 131 Ill. 575, 23 N. E. 583, 7. L. R. A. 474, where messages considered in other cases are quoted and decisions upon them are stated.

Evidence to prove that a sale would have been made to Mrs. Reeves if she had received the message was properly admitted. In a similar situation such evidence was held competent in *Western Union Telegraph*

*Co. v. Sights* (Okla. 1912), 126 Pac. 234, where authorities supporting the ruling are cited. The opinion also holds that default in the delivery of a message importing a mere offer to make a contract will sustain a claim for compensatory damages although no certainty that a contract will be consummated appears upon its face. The court said:

"It does not know that loss will surely follow; but it does know that loss may follow, and that its negligence may prevent the opportunity of making a contract." (p. 236.)

Among the decisions apparently holding that recovery can not be allowed where the default of the company results only in the loss of an opportunity to make an advantageous contract are *Bennett v. Telegraph Co.,* 129 Iowa, 607, 106 N. W. 13 (which may possibly be distinguished by the fact that no offer was contained or referred to in the message) and *Lumber Co. v. Telegraph Co.,* 52 W. Va. 410, 44 S. E. 309; see, also, *Manufacturing Co. v. Telegraph Company,* 152 N. Car. 157, 67 S. E. 329, 27 L. R. A., n. s., 643. In a note at page 641 of the volume last cited cases affirming and cases denying the proposition that the loss of opportunity is sufficient are collated. In the first classification the following appears:

"And in *Postal Telg. Cable Co. v. Louisville Cotton Oil Co.* (Ky.), 125 S. W. 266, it was said that if the message would have resulted in a sale, or in securing property or employment or other thing of value, the company would be liable for the loss that was the natural and proximate result of its negligence in handling the message."

The rule thus stated is believed to be just and reasonable and well supported by authority. Other notes citing cases on this subject appear in 41 L. R. A., n. s., 1188, and 42 L. R. A., n. s., 419.

The message in this case as delivered to the company plainly indicated that the sale of a farm was intended; that an offer of the price stated had been made; and

that a better offer was invited. It was sufficient to suggest to the ordinary mind and to afford notice to the operator that if it were not delivered the benefit of a better offer might be lost. The purpose in sending the message plainly appeared to be to obtain a higher price than the one already offered. The operator was therefore reasonably informed from the contents of the message that it was not only one of business importance, but also of the nature of the transaction and of probable losses that might reasonably be expected to follow a failure to properly trasmit it. This was sufficient to create a liability for consequential damages.

The remaining question relates to the extent of recovery. It is insisted that the loss of commissions paid on acceptance of the offer referred to in the telegram is too remote to be considered. The general rule is that the loss of an opportunity to sell occasioned by nondelivery or alteration of a telegram is the difference between the price that would have been paid and the market value or the price obtainable after a reasonably diligent effort. (Joyce on Electric Law, § 962; Jones, Telephone & Telephone Companies, § 546.) Doubtful and remote losses are excluded here as in other cases. If the plaintiff had received only $24 per acre, the amount previously offered, the direct loss— leaving out any consideration of commissions, would have been $640. They were negotiating with Mrs. Reeves without the intervention of an agent, but with the other party through an agent, and therefore the result to them was a loss of $425, paid to that agent. This loss was consequent upon the change in the message which prevented the sale to her. The net result is precisely the same as it would have been if they had sold the farm for $425 less than her offer, without paying commissions. The commission was a reasonable expense in effecting the sale, made necessary by the default of the company.

Whatever may be the general rule with reference to losses caused by the payment of brokerage in sales of commodities upon the market, or the expense of abstracts, commissions and the like, usually incident and fairly to be anticipated in sales of real estate, as elements of consequential damages, in this particular case a direct loss of $425 clearly appears.

The judgment is affirmed.