## THE WESTERN UNION TELEGRAPH COMPANY vs. N. LEHMAN & BROTHER.

*Liability of Telegraph Company for Delay in Delivery of Message— What Damages are Within the Contemplation of the Parties—Direct Result of Breach of Contract—Instruction as to Damages— Non-Reversible Error.*

The plaintiff, having contracted to send cattle to Europe by a steamer sailing from Baltimore on November 13th, directed his agent in Virginia to forward cattle to that port and to telegraph when shipment was made. The agent in the afternoon of November 11th, sent to plaintiff the following telegram: "Shipped cattle today." This was received

by the defendant telegraph company at 9.30 o'clock P. M. that day at an office near plaintiff's residence, where the company had been instructed to deliver telegrams received for plaintiff after business hours; but the telegram was not delivered until 3 o'clock in the afternoon of November 12th, at plaintiff's business office. In consequence of the non-delivery of the telegram on the morning of the 12th, plaintiff purchased other cattle for the foreign shipment and had left on his hands, after the receipt of those sent by his agent, a number for which he had no use and which he sold at a loss. In an action against the telegraph company, *held*, that this loss, resulting from the failure to make due delivery of the telegram was an ordinary and direct result of such failure which the law presumes to have been contemplated by the parties, since the message showed on its face that it related to a commercial transaction and that a loss would be likely to occur if not promptly delivered. Consequently, the plaintiff is not limited to the recovery of nominal damages, or the money paid for the telegram, but may recover his actual loss.

Whether the form of an action against a telegraph company for negligence in the delivery of a message be *ex contractu* or *ex delicto*, the measure of damage is a matter of law for the Court.

In an action to recover from a telegraph company the damages resulting from its failure to deliver with due diligence a telegram, it is error to instruct the jury that if they find that the defendant did not use ordinary care, whereby the loss in question arose, "then the plaintiff is entitled to recover to such an extent as the jury shall believe he sustained loss." Such instruction leaves the whole question of damages at large, without any direction as to what elements and within what limits the damages may be estimated.

When a granted instruction fails to inform the jury as to how damages should be estimated in the particular case, but the jury returns a verdict for the precise sum which the evidence shows was the actual loss sustained by the plaintiff, and the plaintiff is entitled to recover that sum, the granting of such erroneous instruction is not a reversible error.

When a telegram as delivered is addressed to a party's residence and the paper alleged to be the original message as sent was addressed to the party's place of business, it is for the jury to determine how the original message was addressed. And a prayer authorizing the jury to find that the telegram was addressed to the party's residence cannot be excepted to on the ground that there is no evidence to show that fact.

*Decided April 2nd, 1907.*

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*W. Irvine Cross* and *Frederick C. Colston*, for the appellant·

*Wm. Pinkney Whyte* and *Louis B. Bernei*, for the appellees.

PEARCE, J., delivered the opinion of the Court.

This action was brought by the appellees against the appellant for the recovery of damages alleged to have been caused by negligent delay in the delivery of a telegram sent to them.

The appellees are exporters of cattle, and have been engaged in the business many years in the city of Baltimore, shipping large numbers to Liverpool, London, Glasgow and other ports in Europe, chiefly by the Johnston Line steamers sailing from Baltimore. These cattle are purchased through agents in various States, largely in Virginia, Kentucky and Ohio, and are shipped as required from the place of purchase, so as to arrive one day before the day fixed for loading the steamer. Under the arrangement with the steamer line, the appellees contract for space according to the capacity of the steamer, and this space must be paid for whether it is all used or not, and the steamer line gives notice usually a week ahead, of the sailing day, and again notifies the shippers a day or two before sailing, when to have the stock alongside the vessel. Under this arrangement, the appellees in November, 1903, had contracted for space for 505 cattle on the Steamer Ulstermore, and on November 7th were notified by the steamer's agents to have the stock ready for Saturday, November 14th, and on November 13th were notified to have the stock alongside the ship at seven o'clock next morning.

In order to make up this shipment, the appellees had purchased through their agents in Tazewell, Virginia, Messrs. Brown & Crockett, 331 head of cattle, which the appellees directed to be shipped on November 11th, 1903, for the Ulstermore, and also directed Brown & Crockett to telegraph them when the shipment was made. The cattle were shipped accordingly on November 11th, and immediately thereafter,

on the afternoon of the same day, Brown & Crockett sent the
appellees the following telegram:

"Tazewell, Va. Nov. 11th, 1903.
To N. Lehman & Bro.
          1819 Eutaw Place.
                    Shipped cattle to-day
                              Brown & Crockett."

Instructions had been given the defendant company to deliver
all messages received at night, at 1819 Eutaw place, the resi-
dence of the appellees, and to deliver those received in business
hours at the office, 16 South Paca street. This telegram was
received by the defendant company at 9.30 P. M. on the 11th
inst., at its office, No. 321 Wilson street, two blocks distant
from 1819 Eutaw place, but was not delivered until three
o'clock in the afternoon of the 12th inst., when it was sent to
the office at 16 South Paca street.

Not receiving any notice of the shipment of these cattle dur-
ing the night of the 11th, or the morning of the 12th, the ap-
pellees, in order to ensure as far as possible the loading of the
Ulstermore, were obliged to telegraph during the morning of
the 12th to points in Fauquier and Rappahannock Counties, Va.,
where they had other cattle intended for shipment by a later
steamer, and did order from these points 171 cattle which ar-
rived in time for the purpose. On Friday, the 13th, the 331
head shipped by Brown & Crockett arrived in Baltimore, the
result being, that the appellees had on their hands in Baltimore
164 head of cattle for which there was no space on the Ulster-
more. This was on Friday; the next market day in Baltimore
was on Monday, and there was no opportunity to dispose of
these cattle in Baltimore before Monday. In Philadelphia
there was a market on Saturday, and the appellees immedi-
ately shipped them over to Philadelphia, and there sold them
on Saturday, one of the appellees going with them and per-
sonally attending to the sale. The result was a loss of $4.43
a head on the 164 cattle, aggregating $726.52, payment of
which was demanded of the company, and was refused, and
upon the trial in the lower Court the jury rendered a verdict

for the amount claimed, the evidence being that this was the difference between what these cattle cost the appellees, and what they sold for in Philadelphia.

The only exception was to the ruling of the Court upon the prayers.

The plaintiffs offered the following prayer which was granted:

*Plaintiff's Prayer.*—The jury are instructed that if they find that the defendant, in the usual course of its business, for compensation, received and accepted from the plaintiff's agents, the telegram mentioned in evidence, for transmission and delivery to the plaintiff in Baltimore City, and if they shall further find that said telegram was received by said defendant's agents at the office of the defendant, No. 321 Wilson street, in said city of Baltimore, at 9.30 P. M., on November 11th, 1903, and if they shall further find that said telegram was addressed to said plaintiffs at their residence, No. 1819 Eutaw place, in said Baltimore City, and that such residence was within two blocks from said defendant's office, and if they shall further find that said telegram was not delivered to said plaintiffs until 3 P. M. of November 12th, 1903, and then delivered at 16 S. Paca street, and if they shall further find that the defendant did not use such ordinary care and diligence in delivering said telegram as is usually used and adopted by prudent business men in like business, and if they shall further find that by reason of such neglect, the loss in question arose, then the plaintiffs are entitled to recover to such an extent as the jury shall believe from the evidence, they sustained loss.  *Granted.*

And the defendant offered the following three prayers which were refused:

1st. The Court instructs the jury that should they find for the plaintiff in this case, their verdict must be limited to nominal damages.

2nd. The Court instructs the jury that there can be no damages given in this case for loss incurred by the plaintiff by the sale of cattle in Philadelphia at a less price :han that paid for the same, or for the expense incurred in sending the

said cattle to Philadelphia, but their verdict, if they should find for the plaintiff, must be limited to the amount paid by the plaintiff to the defendant for the sending of the telegram testified to by the witness.

3rd. The Court instructs the jury that there has been no evidence offered in this case, legally sufficient to show a breach of its contract by said defendant, and their verdict must therefore be for the defendant.

The defendant specially excepted to the granting of plaintiff's prayer, because there was no evidence offered legally sufficient to prove that the original telegram mentioned therein was addressed to the plaintiffs at their residence, 1819 Eutaw street, in Baltimore, and this motion was overruled.

The defendant's first and second prayers which seek to limit its liability either to nominal damages, or to the amount paid for the transmission of the telegram, are based upon the rule as to the measure of damages which was applied in *Hadley* v. *Baxendale*, 9 Exchequer, 341, and which was adopted and applied by this Court in *United States Tel. Co.* v. *Gildersleeve*, 29 Md. 251. The case of *Hadley* v. *Baxendale*, was reviewed in *Wilson* v. *Newport Dock Co.*, 1 L. R. Exch. 184, and BARON MARTIN, though he had concurred in that judgment, in a dissenting opinion in *Wilson* v. *Newport Dock Co.*, while sustaining the correctness of the rule as applied to the facts in *Hadley* v. *Baxendale*, declared that it was "not of universal application." That case however, remains the law of England, and has been generally approved in this country, and has been too often recognized in this State, to be departed from even if we were so disposed. We agree with the language of JUDGE ALVEY in 29 Md. *supra*, where he said, "We believe it to be obviously just and reasonable, and we take it to be the true rule upon the subject." In that case, the dispatch was, "Sell fifty gold," and damages were claimed for loss caused by delay in delivering the dispatch. It was proved that this would be understood among brokers to mean $50,000 of gold, but it was not shown, nor was it put to the jury to find that the defendant's agents so understood it, or

that they understood it at all. The Court·said this was as likely to be taken to mean fifty dollars, as fifty thousand dollars by the uninitiated, and it was held that the meaning and importance of the dispatch should have been communicated ·to the agent when it was offered for transmission, and as that was not done, the damages claimed were not recoverable.

In *Webster* v. *Woolford*, 81 Md. 331, where *Hadley* v. *Baxendale* was again cited and approved JUDGE ROBINSON directs attention to the division of the rule into two parts, and uses the following language indicating quite clearly the two classes of cases governed by the rule; "The first part of the rule as thus laid down applies to cases in which the damages are the direct and natural result of the breach of the contract, *and which the law presumes to have been in the contemplation of both parties.* The latter part of the rule applies in cases where special damages are claimed under special circumstances *made known* by the plaintiff to the defendant at the time the contract was made; and in such cases the plaintiff is entitled to recover such damages as may reasonably be supposed to have been in the contemplation of both parties in view of the circumstances thus disclosed."

The case before us we think clearly comes within the first class thus described in *Webster* v. *Woolford.*

In *Jones on Telegraph and Telephone Companies*, sec. 519, it is said: "It is presumed they know, where no information is given them to the contrary, that all messages are of importance, and that great loss or injury may be the result of a failure on their part to properly discharge their duty; and that they are therefore supposed to have contemplated all the damages flowing naturally and directly from such failure, though they may not have had actual knowledge of *what* damages might result at the time of accepting the message." And again in sec. 535, "If it (the message) is sufficiently plain to indicate that it relates to business transactions of much importance, and that loss will probably result unless it is promptly transmitted and delivered, recovery will not be limited to nominal damages."

In this case the record shows that the plaintiffs had been buying cattle in that part of Virginia for twenty years, and that it was known there that they bought for export as well as for sale in this country, and Mr. Lehman said that they received in the course of a year as many as 2500 or 3000 similar telegrams from Brown & Crockett from Tazewell, Virginia. At a small station such as Tazewell, the shipment of so large a number of cattle at one time must have been known to the telegraph operator, as well as the custom of the plaintiffs, and such a message bore upon its face the necessity of prompt transmission and delivery. It also appears that this importance was known to the receiving office in Baltimore, because they were instructed to deliver all such messages received after business hours, at the plaintiffs residence, and had been accumstomed to do so up to so late an hour as midnight. We therefore think the damages claimed in this case are such as arise "naturally, *i. e.* according to the usual course of things, from the breach of contract," and must be presumed to have been in the contemplation of the parties. There are ample illustrations of this view, among which may be cited the following:

"If enough appears in the message to show that it relates to a commercial transaction between the correspondents it will be sufficient to charge the company with damages resulting from its negligent transmission. It certainly cannot be contended that the agent must be informed of all the facts and circumstances pertaining to a transaction referred to in a telegram, which are known to the parties themselves, to make his company liable for more than nominal damages. If it should be so held, the telegraph would cease to be of practical utility in the commercial world." *Postal Tel. Co.* v. *Lathrop,* 131 Ills. 575.

Where the message sent and negligently delayed was, "ship hogs at once," the measure of damages was held to be the difference between the market value of the hogs on the day the plaintiff was able to put them in market after receiving the delayed telegram, and their value on the day they would

have been in market if the dispatch had been promptly delivered. *Manville* v. *W. U. Tel. Co.*, 37 Iowa 217.

Where a message ordered the purchase of stock which advanced in price between the time when the message should have been delivered, and the time when it was purchased under a second message, the advance was held the measure of damages. The Court said, "The dispatch was such as to disclose the nature of the business to which it related, and that loss might be likely to occur if there was want of promptitude in transmiting the dispatch." *U. S. Tel. Co.* v. *Wenger*, 55 Pa. St. 267.

Where one sold cattle for future delivery, at the option of the purchaser, and the latter sent a dispatch, "Want your cattle in the morning," in pursuance of a custom among stock dealers to take and weigh cattle at early daylight, which dispatch was not promptly delivered whereby the weighing of the cattle was delayed, and their weight decreased, the seller may recover for the loss of weight so resulting from the company's negligence. *Hadley* v. *W. U. Tel. Co.*, 115 Ind. 191.

It may be observed that in that case the Court cited and approved both *Hadley* v. *Baxendale* and *U. S. Tel. Co.* v. *Gildersleeve.*

We discover no error in the rejection of the defendant's first and secondprayers.

The reasons which led to the rejection of the defendant's first and second prayers would also require the rejection of the defendant's third psayer; but there is a further reason for its rejection. It is well settled that it makes no difference whether the form of the action is *ex delicto* or *ex contractu*, the real and substantial gravamen of the complaint is the alleged breach of the contract, and in such a case the same law is applicable to both classes of action   *   *   *   and the measure of damages is equally a question of law, and as much under the control of the Court as if the right rested in agreement merely. *B. & O. R. R.* v. *Pumphrey*, 59 Md. 399.

In *B. & O. R. R.* v. *Carr*, 71 Md. 135, the defendant's first prayer, the Court said, seemed to be based upon the theory

that the action was, in substance at least, an action upon the contract of carriage.   But the Court said, "This is in form an action in tort," and "in cases of the class to which this action belongs, the refusal or neglect to perform a duty, as well as the negligent performance of it, furnishes a ground of action in tort.   In such case, both the non-feasance and the misfeasance constitute a wrongful act, for which the remedy may be either by action on the contract or in tort, at the option of the party injured.   The prayer, as an abstract proposition may be correct enough, but it would likely have a tendency to mislead in a case like the present, and therefore there was no error in its rejection."·  This is directly applicable to defendant's third prayer in the present case.

There was no error in overruling the special exception to the plaintiffs' prayer since the copy of the telegram delivered on the 12th of November was addressed to plaintiffs' residence, and though the paper shown the witness Binswanger, and alleged to be the original message, purported to be addressed to 16 South Paca street, it was for the jury to determine whether it was the original message, and how that message was addressed.   This brings us to the plaintiffs' prayer.

The plaintiff relies in support of this prayer upon the case of *B. & O. R. R.* v. *Schumacher*, 29 Md. 170, in which a prayer was granted which concludes with the precise language of the plaintiffs' prayer in this case, and the ruling was not reversed on appeal.   However that prayer may have been regarded in that case, we think it should not have been granted in this case.

In *B. & O. R. R.* v. *Carr*, 71 Md. 143, an instruction was granted that "the plaintiff is entitled to such damages as the jury may find under all the circumstances, would compensate him for the refusal of entrance to the train."   JUDGE ALVEY said, "This left the whole question of damages at large, without definition by the Court, to the discretion of the jury, and without any criterion to guide them.   What *compensation* would embrace, whether for actual and necessary expenses incurred by reason of the refusal, or the mere delay, or disap-

pointment in pleasure, or the *possible loss* in business transactions, however remote or indirect, were matters thrown open to the jury, and they were allowed to speculate upon them without restraint. This is not justified by any well established rules of law * * * The Court must decide and instruct the jury, in respect to what elements, and within what limits, damages may be estimated in the particular action." For these reasons we cannot approve that prayer. But it is apparent, we think, that the granting of this prayer worked no injury to the defendant, and if this be so, there is no reversible error. The declaration claimed $1,500 damages, and if the jury had given that amount, or any sum greater than that shown by all the evidence to be the actual loss sustained in the transaction, there would have been a concurrence of error and injury. But the jury found a verdict for the precise sum testified to as the actual loss sustained, the difference between the cost of the cattle in Virginia, and the amount realized on them in Philadelphia, and under these circumstances we do not feel justified in disturbing the verdict.

*Judgment affirmed with costs above and below.*