WESTERN UNION TELEGRAPH COMPANY *vs.*
GEORGE F. FISH, INC.

*Telegraph Message—Mistake in Transmission—Damages—
Obscurity of Language.*

If a telegraph message itself is clear enough to indicate that it relates to a business contract of importance, and that loss will probably result through negligence in its transmission, damages for such loss will be regarded as having been within the contemplation of the parties when the contract for transmission of the telegram was made.    p. 215

A telegraphic message which referred to sales, to the market, and to cars, *held* sufficient to inform defendant company that it referred to a business transaction, and that loss might probably result if the words therein "want none present," were changed in transmission so as to read "want more present."
    p. 215

In order to charge the company with a loss resulting from its negligence in transmitting a message, it is necessary only that it be informed that it relates to a business transaction, and that loss will probably occur if it is altered or delayed, and it is unnecessary to apprise it of the details of the message.    p. 216

A message which read, "selling rough at cost four cars Florida one California want none present Norfolk kicks prices three four fifty Florida" *held* not "obscure" within the meaning of a rule of the company excluding liability for errors in cipher

or obscure messages, the words employed having some definite coherence and connection, and being clearly related to each other.                                         pp. 216-220

The word "cipher" ordinarily means a secret or disguised written communication, unintelligible without a key, and does not apply to such a message.                         p. 216

The word "obscure" as used in the rule of the telegraph company is not to be restricted to the legibility of writing of a message, it being obscure within the rule if the words are apparently without sense or meaning when read.         p. 217

In an action against a telegraph company on account of a mistake in transmission of a message to plaintiff's agent, *held* that, plaintiff having testified that he made purchases on a declining market by reason of the mistake, which he would not otherwise have made, this was a question for the jury.     p. 221

*Decided April 17th, 1925.*

Appeal from the Baltimore City Court (DUKE BOND, J.).

Action by George F. Fish, Incorporated, against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*W. Irvine Cross,* with whom were *Francis R. Stark* and *Joseph L. Egan* on the brief, for the appellant.

*L. Wethered Barroll,* with whom was *Richard C. Bernard* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On January 18th, 1923, "George F. Fish, Inc.," a produce dealer operating in Baltimore, addressed to John P. Nolan, its agent, then at Sanford, Florida, this telegram: "Selling rough at cost four cars Florida one California

want none present Norfolk kicks prices market three four fifty Florida," which it delivered to the Western Union Telegraph Company for transmission. In transmitting it the word "none" was change to "more," so that as changed it read: "Mr. John P. Nolan, Sanford, Florida. Selling rough at cost four cars Florida one California want more present Norfolk kicks prices market three four fifty Florida."

According to the plaintiff's testimony, the message was intended to inform Nolan that the appellee had "plenty" of celery, that the market was declining and that he should not buy any more, but that in consequence of the mistake he bought seven cars of celery which had to be sold at a loss on a declining market. The appellee thereupon demanded that the appellant reimburse it for that loss, and upon its refusal to do so it sued the appellant in an action on the case for the loss which it claimed to have sustained as a result of the negligent alteration of the word "none" into "more." The trial of the case in the Baltimore City court resulted in a verdict and judgment for the plaintiff, from which judgment the defendant appealed.

The single exception found in the record presents for our consideration these points: (1) were the damages occasioned by the mistake within the contemplation of the parties when the contract for transmitting the telegram was made; (2) was the message "obscure" within the meaning of the appellant's rules filed with the Interstate Commerce Commission and printed on the back of the telegram; and (3) was the error complained of the proximate cause of the appellee's loss? And those questions grow out of these facts:

Fish & Co., at the time the telegram was sent, was dealing largely in celery. Nolan was its manager, and at the time the telegram was sent he was in Florida, where he had gone to buy celery. Nolan either bought or approved all purchases of celery for the appellee, and when he was away Miss Anita Goldblum was in charge of the Baltimore office, and she communicated with him almost daily in reference to the state of the celery market, telling what it needed and direct-

ing him to buy or not to buy, accordingly as the market was rising or falling. When he received the telegram the appellee had already bought a large quantity which had not been disposed of, but as soon as he received it he bought "seven to ten" cars more, on which the appellee suffered a loss of over five hundred dollars.

It also appears from the evidence that rule 1 of the rules and regulations of the appellant on file with the Interstate Commerce Commission and assented to by the appellee contained this proviso:

"The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the unrepeated message rate beyond the sum of five hundred dollars ($500) * * * nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure messages."

The defendant's first prayer presents the point that the damages suffered by the plaintiff were not such as were in the contemplation of the parties when the contract was made; its third prayer rests upon the proposition that the plaintiff could only recover the cost of the telegram because the telegram was "obscure," and hence within the scope of the proviso we have just quoted, and its fifth prayer instructed the jury that there was no evidence in the case legally sufficient to show that the damages suffered by the appellee were the direct and proximate result of the error. Some question was raised as to the form of these prayers, but in our opinion they are sufficient to raise the questions we have stated, and we will now consider those questions in their order.

The appellant contends that its first prayer is based upon the rule stated in *Hadley v. Baxendale,* 9 Exch. 347, and approved by this Court in *United States Telegraph Co. v. Gildersleeve,* 29 Md. 232, where it said: "The rule seems to be now pretty well established that a party can only be held responsible for such consequences as may be reasonably sup-

posed to have been in the contemplation of both parties at the time of making the contract, and that no consequence, which is not the necessary or ordinary result of a breach can be supposed to have been so contemplated, unless full information be imparted to the party sought to be held liable at the time of entering into the engagement." Referring to the same rule, it was said in *Webster v. Woolford,* 81 Md. 331: The first part of the rule as thus laid down applies to cases in which the damages are the direct and natural result of the breach of the contract, and which the law presumes to have been in the contemplation of both parties. The latter part of the rule applies in cases where special damages are claimed under special circumstances made known by the plaintiff to the defendant at the time the contract was made; and in such cases the plaintiff is entitled to recover such damages as may reasonably be supposed to have been in the contemplation of both parties in view of the circumstances thus disclosed. * * * Whether special damages may reasonably be supposed to have been in contemplation of both parties, depends in every case upon how much of the real situation of the parties was so disclosed at the time the contract was made as to render it a fair inference of fact that damages of that class were intended to be recouped if suffered. *Grebert v. Nugent,* L. R. 15 Q. B. D. 85." That rule was again approved in *Western Union Telegraph Company v. Lehman,* 105 Md. 448, in the following language: "That case, however, remains the law of England, and has been generally approved in this country, and has been too often recognized in this State to be departed from even if we were so disposed."

In the case last cited the question before the court was whether a telegraph company was liable for delay in transmitting a message reading "Shipped cattle today," and it was there held that the case fell within the first division of the rule stated in *Hadley v. Baxendale, supra,* and that the damages were the direct and natural result of the breach of the contract which the law presumed to have been in the

contemplation of the parties.   In the last cited case, the Court quotes these extracts from *Jones on Telegraph and Telephone Companies,* sections 519 and 535: "It is presumed they know, where no information is given them to the contrary, that all messages are of importance, and that great loss or injury may be the result of a failure on their part to properly discharge their duty, and that they are therefore supposed to have contemplated all the damages flowing naturally and directly from such failure, though they may not have had actual knowledge of what damages might result at the time of accepting the message. * * * If it (the message) is sufficiently plain to indicate that it relates to business transactions of much importance, and that loss will probably result unless it is promptly transmitted and delivered, recovery will not be limited to nominal damages."

These cases, applying the rule first stated in *Hadley v. Baxendale, supra,* in determining whether special damages may be recovered for the breach of a contract, hold that the party to be charged must have had notice at the time the contract was made that such damages might result from its breach, but that the information may be conveyed by the language of the contract itself.   And that, in such a case as this, if the message itself is clear enough to indicate that it relates to a business contract of importance and that loss will probably result through negligence in its transmission, recovery will not be limited to nominal damages.   In this case there is no evidence legally sufficient to warrant the inference that the appellant had any notice other than that conveyed by the language of the message that it related to a business matter, or that loss would likely result from negligence in transmitting it, and the question is whether its language conveys that notice.   While its language could have been plainer, it is obvious that it relates to some business transaction.   It refers to sales, to the market, and to cars. Those words are, we think, sufficient to inform any one as familiar with the ordinary language of trade and commerce as the appellant must necessarily be, that it at least referred

to a business transaction, and it may also have reasonably been inferred that loss might probably result if the words "want none present" were changed so as to read "want more present." It may, of course, be asked, and with some reason, how the damages could have been in the contemplation of the parties if one of them could not possibly have understood what the message meant or what it was about except that it probably related to some business transaction, but the answer to that is that in order to charge the appellant for loss resulting from its negligence in transmitting the message, it was unnecessary to apprise it of the details of the message, but only to inform it that it related to a business transaction and that loss would probably occur if it were altered or delayed.   That rule as thus stated cannot be regarded as a modification of the rule in *Hadley v. Baxendale, supra,* because it recognizes the principle that the damages must have been in contemplation of the parties at the time the contract was made, but it does supply a somewhat arbitrary formula for ascertaining what the phrase "in contemplation of the parties" means, but it has been recognized, not only by this Court, but by the weight of authority elsewhere, and must be regarded as the law, and the court was, therefore, justified in refusing the defendant's first prayer.

The defendant's third prayer presents the proposition that the message is "obscure" within the meaning of the proviso that the company shall not be liable for "errors in cipher or obscure messages," its contention being that the word "obscure" refers to the intelligibility of the words employed, while that of the appellee is that it refers to the legibility of such words.

A "cipher" is ordinarily taken to mean a secret or disguised written communication unintelligible to one without a key, and has no application to such a message as this. *Pepper v. Telegraph Co.,* 87 Tenn. 554, 4 L. R. A. 660 The adjective "obscure" literally means deficient in light, dark, dim, and may be applied to words or to things, and may refer to appearance or meaning.   Applied to things it

means "without clearness of form or outline; indistinct, undefined, hardly perceptible to the eye, faint light"; applied to words, statements or meanings, it signifies "not perspicuous; not clearly expressed, hard to understand." *Oxford Dictionary.* That is the usual and ordinary definition of the word, and there is no reason to assume that as used in the rule referred to it was intended to have any other or different meaning. Indeed the reason for the rule excludes any such an hypothesis. Its obvious purpose was to exclude liability for errors in the transmission of messages where they were so expressed that no assistance could be received in detecting errors in transmitting the words forming the message from the context. And that reason would exist whether the message were in cipher or in some jargon wholly unintelligible to one unfamiliar with the special trade, business, or other matter to which it was peculiar.

Nor does there seem to be any good reason for assuming that it was meant to relate only to the legibility of the writing of the message, for even if the writing were legible, it would still be obscure if the words apparently were without sense or meaning when read.

It is true that in *Primrose v. Western Union Tel. Co.,* 154 U. S. 1, the court, in referring to the word "obscure" in that proviso, said: "It is difficult to see anything unreasonable, or against public policy, in a stipulation that if the handwriting of a message, delivered to the company for transmission, is obscure, so as to be read with difficulty, or is in cipher, so that the reader has not the usual assistance of the context in ascertaining particular words, the company will not be responsible" etc.; but there is nothing in that expression to convey the idea that the court meant to exclude the application of the word to the intelligibility of the message and to confine it to its legibility. It used the word "handwriting" for instance, yet it could hardly be said that it thereby meant that "obscure" could not also refer to type-writing or printing. It apparently meant, and only meant, that "obscure" could apply to the legibility of a message. It said nothing else and there is no reason to assume that it

meant anything else, and in *Ferrero v. Western Union Tel. Co.,* 9 App. D. C. 455, 35 L. R. A. 548, the Court of Appeals of the District of Columbia assumed that the opinion did not confine the application of "obscure" in the proviso to the legibility of the writing, and in that connection it said: "Where a message is in cipher, or in language evidently intended to be unintelligible to the telegraph company and its operators, the rule by which we must be guided is, that consequential damages are to be excluded from consideration, and the recovery limited to the sum paid for the message. *Primrose v. Western Union Teleg. Co.,* 154 U. S. 1, 33, 38 L. Ed. 883, 896. It is true that in the foregoing case the contract, which was in evidence, contained a stipulation to the effect that the defendant would not be liable 'in any case' 'for errors in cipher or obscure messages,' and this was held to be a reasonable restriction. The decision, however, was not based on that ground alone, as will be seen in the opinion of Mr. Justice Gray, who reviewed the cases generally on the question of the measure of damages, irrespective of contract limitations, in cases where the despatches were in cipher or otherwise unintelligible. The rule in respect to cipher despatches has been applied, too, to others which, as delivered, were 'unintelligible jargon' (*Hart v. Direct United States Cable Co.,* 86 N. Y. 633); or conveyed no possible suggestion of pecuniary value (*Baldwin v. United States Teleg. Co.,* 45 N. Y. 744, 749, 6 Am. Rep. 165), or were so obscure as to require explanation in important particulars. *United States Teleg. Co. v. Gildersleve,* 29 Md. 232, 96 Am. Dec. 519."

That the writing in which the message was given to the appellant was legible is undisputed, and the first question therefore is: Does the proviso in question require the message to be any more intelligible than is necessary to inform the telegraph company of its general character and of the fact that loss may result from its alteration? In dealing with that question it must be remembered that it is different from that raised by the first prayer of the defendant, where the inquiry was as to what damages were contemplated by the

parties when the message was sent. In that case it was sufficient if the company knew that the message related to a business matter, and that loss would likely result from its alteration, while here the inquiry is whether the obscurity took away from the company the protection afforded by the proviso that it should not be responsible for errors in the transmission of unrepeated messages where they were "in cipher or obscure." In *Primrose v. Western Union Tel. Company, supra,* it was assumed that the purpose of that proviso was to give the reader "the usual assistance of the context in ascertaining particular words." In that case the message read: "Despot am exceedingly busy bay all kinds quo perhaps bracken half of it mince moment promptly of purchases." "As delivered by the company to the plaintiff's agent in Kansas, it had the words 'destroy' instead of 'despot,' 'buy' instead of 'bay,' and 'purchase' instead of 'purchases.' " In referring to that mistake the court said: "As has been seen, the only mistake of any consequence in the transmission of the message consisted in the change of the word 'bay' into 'buy,' or rather of the letter 'a' into 'u.' In ordinary handwriting, the likeness between these two letters, and the liklihood of mistaking the one for the other, especially when neither the word nor the context has any meaning to the reader, are familiar to all; and in telegraphic symbols, according to the testimony of the only witness upon the subject, the difference between these two letters is a single dot." In *Bailey v. Western Union Tel. Co.,* 227 Pa. 522, 43 L. R. A. (N. S.) 502, a great number of cases dealing with the responsibility of telegraph companies for errors in transmitting cipher or obscure message are collected. Those cases, and later cases collected in *Rose's Notes on United States Reports,* lead to the conclusion that the words "cipher" and "obscure," as used in the proviso, alike mean unintelligible.

The question therefore is further narrowed to this, to what extent must the message be untelligible to be "obscure" within the meaning of that proviso? Is it necessary that its entire meaning shall be plain or only that there shall appear

to be some definite and coherent relation between its words? Upon that point there is little direct authority, but as a matter of sound reason it would seem that if the message is so constructed that the words employed in it have some definite coherence and connection, and are clearly related to each other, that it is not necessary that the interpretation of the whole message shall also be clear.

Applying these principles to the facts before us we are unable to say as a matter of law that the message in this case was "obscure." It stated that the sender was "selling rough at cost." It actually meant that it was selling rough celery at cost, but while the telegraph operator could not have known that "rough" referred to celery, he must have known that it referred to some commercial commodity which was the subject of barter and sale. Those words were followed by the words "four cars Florida one California." Now while it was uncertain whether "Florida" and "California" were trade names for some variety of the commodity referred to, or were intended to designate the location of the cars, it was plain enough that these words may have designated the quantity of the commodity which was being sold at cost. Then follow the words "want none present." Those words are a plain consequence of the preceding statement that the sender was selling the commodity at cost, and their meaning is made more obvious by the words following them, "Norfolk kicks prices three four fifty Florida," which apparently explained that the commodity was being sold at cost, because Norfolk had affected the prices and driven them to the figure named. Certainly there was enough in this to inform one reading it that the word "none" had a definite and important relation to the word "want," and that to change "none" into "more" would change the meaning of the entire message, regardless of what the commodity was to which it was intended to refer. We cannot say therefore as a matter of law that the message was "obscure" within the meaning of the proviso under consideration, and there was in our opinion no error in refusing the defendant's third prayer.

Nor can we say as a matter of law that the plaintiff was not led to buy the celery as the proximate result of the error in the telegram, in view of the plain and explicit statement in the altered telegram that "we want more present." He testified in so many words that he would not have bought more celery but for those words and, however incredible that testimony may have seemed, the jury were entitled to pass on it. There was therefore no error in refusing the defendant's fifth prayer.

Finding no error in the rulings involved in the only exception before us, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*