# AMERICAN RAILWAY EXPRESS COMPANY, INC., *vs.* PENINSULA PRODUCE EXCHANGE.

*Carriers—Furnishing of Refrigerator Car—Validity of Contract—Negligent Delay—Evidence.*

A request to a carrier's agent to furnish a refrigerator car at a certain time and place, and the agent's promise to comply with such request, involve a valid contract at common law.
p. 468

The breach by a carrier of the obligation imposed by a contract made by it, to furnish a car at a certain time and place, would, conceding the validity of the contract, entitle the shipper to sue either in contract or in tort.          p. 468

If the action is in case, for the tort, some clear act of negligence by the carrier must be shown, beyond the mere breach of the contract, but the rights and duties of the parties are ascertained from and measured by the nature of the contract.
p. 468

A contract by a public carrier to furnish a refrigerator car, at a designated time, for an interstate shipment, was invalid under the Interstate Commerce Act, since this would have created an advantage or preference not available to all, and not provided for in the published tariffs.          p. 470

The shipper was charged with notice of the published tariffs, and was therefore affected with knowledge that the carrier could not enter into such a contract, and that the carrier's agent had no authority to guarantee to furnish such equipment.          p. 470

An express company is bound, in general, to furnish to the public reasonable and ordinary facilities for the transportation, in the order of their offer and without unnecessary delay, of such goods as might reasonably and usually be expected to be tendered in the natural course of the business of carrying express matter.          p. 471

Where the published tariff of an express company provided that a shipper desiring an exclusive or special car for a shipment of second-class matter must make a written request therefor, and strawberries were second-class matter, no duty as to furnishing a refrigerator car for strawberries arose until a written request therefor was given to the carrier.       p. 472

In an action against a carrier for negligence in failing to furnish a refrigerator car on written request in accordance with the tariff, the burden is on the shipper affirmatively to establish a breach of duty which was the cause of the injury.
p. 472

In an action on account of an express company's failure to furnish a refrigerator car for the shipment of strawberries, as requested, *held* that the evidence failed to show any negligence on the company's part that was the proximate cause of the failure of such a car to be placed at the time and station named.                                    pp. 473-475

The carrier of express matter is not bound to employ extraordinary diligence in procuring and forwarding a refrigerator car, even where perishable goods are to be transported, and the shipper, in requesting such a car, is understood to contemplate a performance in accordance with the ordinary course of the express company's business, as conducted in conformity with its published tariffs, and with such diligence as to furnish an available car within a reasonable time, without unnecessary delay.                                    p. 476

*Decided June 11th, 1925.*

Appeal from the Circuit Court for Worcester County (BAILEY, J.).

Action by the Peninsula Produce Exchange against the American Railway Express Company, Inc. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*F. W. C. Webb,* with whom were *Woodcock & Webb* on the brief, for the appellant.

*James M. Crockett,* with whom were *Crockett & Crockett* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Peninsula Produce Exchange, appellee, received an order for a carload of strawberries that it decided to forward to the purchaser in Bangor, Maine, from Snow Hill, Maryland. The established course of its trade required this interstate transportation to be made in refrigerator cars, which were furnished by the American Railway Express Company, appellant, at the designated place of shipment, after having been iced at Berlin. The appellee, accordingly, gave to the appellant, on May 17th, 1923, a verbal and then a written request for an express refrigerator car, which was to be placed, iced for loading strawberries, at Snow Hill, not later than Friday afternoon of May 18th. While it is true that, when the car was ordered, there was no express direction that it should be iced at Berlin, yet this was the usage which governed the transportation of berries in refrigerator cars from Snow Hill and, furthermore, the delivery of an uniced car at Snow Hill for the carriage of strawberries to Maine would have been a futile act, which was not intended by the parties and which would have been in violation of their clear, although implicit, understanding.

Between nine and ten o'clock, on the morning of May 18th, the agent of the appellee inquired of the appellant whether the car would be provided as ordered, and there is testimony that the agent said to the appellant's local representative that the appellee did not want to buy the strawberries, if the car would not be furnished at the specified time. Although it is flatly contradicted by the testimony produced by the appellant, the evidence on the part of the appellee is that the appellant's agent made inquiry by telephone of his principal whether the refrigerator car would be

on hand at the time desired, and assured the appellee's agent that the car would be placed at the time designated in the order, and that the appellee could safely go ahead in the buying of the strawberries to be loaded. At this time the appellee had not over a half dozen crates of strawberries at Snow Hill, and proceeded to buy and receive on consignment crates of strawberries, so that one hundred and twelve crates were ready for shipment on the afternoon of May 18th, when the refrigerator car had been promised. The refrigerator car did not come, and about nine o'clock at night, the appellee's servants carried the strawberries to the railway freight station at Snow Hill. They there packed the strawberries and shipped them at half past seven in the morning of May 19th in a box freight car, without icing, to New York, where they arrived at midnight, May 20th, and were sold at a loss.

The request of the shipper to the agent of the carrier that the carrier would furnish it a refrigerator car at a certain time and place, and the promise of that agent to comply with such request, is a valid contract at common law. *Clark v. Ulster etc. R. Co.,* 189 N. Y. 93, reported and annotated in 12 Ann. Cas. 883, and 13 L. R. A. (N. S.) 164. The case of *Di Giorgio Co. v. Penna. R. Co.,* 104 Md. 693, is not in conflict with this conclusion, as the proof in the case at bar of an express promise on the part of the carrier to furnish the car desired at the specified time and place was lacking in that case. If it be assumed that the contract on this record was not in violation of the Interstate Commerce Act, a breach of the obligation imposed upon the carrier by its terms would entitle the shipper to bring an action in either contract or in tort, at its election. But if the choice of action is in case, for the tort, some clear act of negligence must be shown on the part of the carrier beyond a mere breach of the terms of the contract. The pleader brought the present case in tort, but the action was dependent upon the contract mentioned; and the rights and duties of the parties are ascertained from and measured by the nature of the contract. *Balto. & O. R. Co. v. Pumphrey,* 59 Md. 390; *Thompson v. Clemens,* 96

Md. 207, 209; *Western Union Tel. Co. v. Lehman,* 105 Md. 450.

The appellee tried his case upon the theory that there had been a negligent failure of the appellant to furnish the refrigerator car in accordance with the stipulation of the special contract, and the proof on the part of the appellee was directed to the establishment of this default. The legal sufficiency of the proof to entitle the appellee to recover was challenged by appellant's rejected first prayer, but, as, this prayer was not addressed to the pleadings, it raised for consideration whether there was a right of recovery upon the proof of a breach of duty imposed, (1) either by a special contract to furnish a refrigerator car at a particular time and place, (2) or by its general obligation as a common carrier.

1. The proof offered by the appellee in the trial of the case tended to show that the appellant, through its agent, had made a contract to furnish a particular shipper with a refrigerator car at a prescribed time and place for the purpose of making an interstate shipment. If such an agreement were lawful, the express company would have been bound to a strict performance of the terms of the contract, and would not have been excused for a failure to furnish the car on the day named at the place designated by proof of due diligence. 10 *C. J., "Carriers,"* secs. 290, 294.

The instant case is, however, one where the contract asserted by the appellee was in reference to an interstate shipment of goods by a public carrier, and the transportation service by the carrier must be rendered in conformity with its published tariffs, and not pursuant to stipulations of a special contract providing for a special service. The rates and schedules of the appellant did not contemplate, nor did they provide for, an expedited interstate service through the furnishing to a particular shipper a refrigerator car at a designated point on a day certain. On the contrary, the record before us establishes that such a preferential service was expressly prohibited. If it were allowed, the purpose of the Interstate Commerce Act, as amended, to compel the estab-

lishment of reasonable rates and non-discriminatory service through the uniform application of relevant tariffs would be defeated. To guarantee that a special car would be furnished at a particular time and place, for the transportation of a common commodity, was to create an advantage or preference which was not available to all and which was not provided for in the published tariffs. *Chicago etc. R. Co. v. Kirby,* 225 U. S. 155, 164, 165. Knowledge of the published tariffs and rules is imputed to the shipper, *supra.* So the shipper had either actual or imputed notice of the published tariff, and was, therefore, affected with knowledge not only that the carrier could not lawfully enter into the purporting contract, because it was forbidden and declared illegal by the Interstate Commerce Act, but also that the carrier's agent at Snow Hill was expressly limited in his authority, so that he "must not guarantee to provide refrigerator or other equipment," *infra.* Any representations of the agent at Snow Hill to the appellee beyond the known scope of his authority could not bind the appellant in a transaction with a shipper having that knowledge. 2 *Mechem on Agency* (2nd ed.), sec. 1727.

In *Davis, Agent, v. Cornwell,* 264 U. S. 560, the Supreme Court held that a contract by a common carrier to provide a shipper with cars for loading on a day certain cattle for transportation in interstate commerce was invalid, as it was not shown or contended that the published tariffs governing the proposed shipment provided in terms for such a contract. In the course of the opinion, Justice Brandeis stated: "That the thing contracted for in this case was a service preliminary to the loading is not a difference of legal significance. The contract to supply cars for loading on a day named provides for a special advantage to the particular shipper, as much as a contract to expedite the cars when loaded. It was not necessary to prove that a preference resulted in fact. The assumption by the carrier of the additional obligation was necessarily a preference. The objection is not only lack of authority in the station agent. The paramount requirement

that tariff provisions be strictly adhered to, so that shippers may receive equal treatment, presents an insuperable obstacle to recovery." And see *Davis, Agent, v. Henderson,* 266 U. S. 92.

It is a necessary result of these decisions of the Supreme Court of the United States that there can be no recovery by the appellee for any default of the appellant in failing to perform a promise of the carrier, through its agent, to furnish under the attempted special contract the refrigerator car at a particular time and place.

2.    The inability of the appellee to recover for a breach of contract or of duty under the illegal special contract would not prevent a recovery for such a negligent failure of the express company to perform its duty as a common carrier as to be the proximate cause of an injury sustained by the appellee. And the remaining question is whether there was any proof legally sufficient for the jury to find that there was negligent delay in the furnishing of the refrigerator car for which the appellant was responsible.

Apart from any obligations attempted to be assumed by a special contract, the common law duty of the express company was, speaking generally, to furnish to the public reasonable and ordinary facilities for the transportation, in the order of their offer and without unreasonable delay, of such goods as might reasonably and usually be expected to be tendered in the natural course of the business of carrying express matter. At the time of the transaction now before the court, strawberries were second class matter for the purpose of interstate shipment by the appellant, and, therefore, the common law duty of the carrier with respect to the carriage of the strawberries was modified by the Interstate Commerce Law through its published tariffs which fixed the duties and measured the liabilities of the carrier in interstate commerce. The transportation service to be rendered was, accordingly, that of a common carrier under published tariffs. The tariff governing this particular transportation service were these rules:

"Rule 16-J.  Refrigeration—Carload Shipments of Perishable Commodities.—The Express Company has arranged for a limited number of refrigerator cars, and, to the extent available, these cars will be furnished on application of shippers.  Agents must not guarantee to provide refrigerator or special equipment.  When such cars are not available, carload shipments requiring refrigerator cars will be accepted only when the cars are furnished by the shipper or railroad company.  Cars will be handled only on trains designated by the railroad company.

"Rule 16-C.  If shipper desires an exclusive or special car for a shipment of second-class matter, he must make written request therefor, and if such car is furnished by Express Company, the charge will be based on the actual or authorized estimated weight, minimum 12,000 pounds, except that when a refrigerator car is requested and furnished, the charge will be based upon the actual or authorized estimated weight, minimum 15,000 pounds."

Under this tariff the implied obligation of the carrier, whenever one of its limited number of refrigerator cars was available, would be to use reasonable diligence to provide, upon reasonable notice, a car for loading the express matter at the time and place desired by the shipper.  If the shipper wanted an exclusive or special car for a shipment of second class matter, as strawberries, no duty of the carrier to the shipper arose until a written request for the service were given to the carrier.  *Davis, Agent, v. Cornwell,* 264 U. S. 560; *Davis, Agent, v. Henderson,* 266 U. S. 92.

The strawberries were never in the custody of the appellant, and were not tendered for carriage.  So, if the action in the case at bar is to be supported by negligent failure of the appellant to perform some duty which was imposed upon it in furnishing to the shipper a refrigerator car in accordance with the published tariff, the burden of proof was upon the shipper affirmatively to establish a breach of duty which was the proximate cause of the injury.  *Baltimore & Ohio R. Co. v. Whitehill,* 104 Md. 295, 314.

A painstaking consideration of the evidence does not disclose any negligence on the part of the appellant that was the proximate cause of the failure of the refrigerator car to be placed at the time and station designated by the shipper. The request for the car, its allotment and delivery to the railway carrier for transportation, and its arrival at Berlin for its first icing and forwarding to Snow Hill, were duly accomplished without delay or other negligence, and in accordance with the established rules and practices with respect to the supply and movement of refrigerator cars in the reasonable marketing of strawberries grown in that peninsular region which embraces Delaware and the eastern shores of Maryland and Virginia. Up to the arrival of the car in Berlin no suggestion is made of any negligent default in the movement of the car.

When the refrigerator car arrived in Berlin at 3.38 p. m., on May 18th, it was detached from the freight train of the Pennsylvania Railway Company and was left at the proper point for icing. The train started southward for Snow Hill fifty minutes after its arrival in Berlin, and reached Snow Hill about six o'clock; and the appellee sought to impute negligence to the appellant from the fact that the refrigerator car did not come into Snow Hill with this freight train, which was the last one to Snow Hill until the next day.

Without the preliminary icing of the refrigerator car at Berlin, it would have been worthless for the purpose of the appellee; and so the placing of the car at the ice plant in Berlin was an anticipated discharge of a duty which the appellant owed to the appellee. The freight train was not run on schedule, but, after dropping out and taking on cars and freight at a local station, it would proceed to the next in accordance with the circumstances of the instant railway traffic. The freight train was owned and operated by the Pennsylvania Railway Company, which must be regarded as the servant of the appellant in the resolution of this case, and so any default on its part would be imputed to the appellant. There is, however, no proof of negligent operation or

delay in the management of the train before it left Berlin, or in the placing of the refrigerator car at the ice plant. Nor does it appear when the car was placed. It follows that there is no testimony to show how long the car had been placed for icing at the plant before the train left. Again, the record is silent as to the usual time requisite for the operation of icing a refrigerator car which might have taken some time; and there is no evidence that it was either the usage of the railway company or within the power of the appellant to compel the railway company to delay the customary movement of its freight train while a refrigerator car was being iced by a third party [see *San Antonio etc. Ry. Co. v. Turner,* 42 Tex. Civ. App. 532, 94 S. W. 214, 216; *Wallace Fermer v. Davis* (Iowa), 199 N. W. 307]. The record, consequently, failed to disclose an opportunity, either arising or neglected, for the car to have been iced while the freight train was at Berlin. It would be rather an extreme and unreasonable conception of due care to exact the detention of a freight train until one refrigerator car after another could be placed and iced, without proof of such a custom.

This conclusion is fortified by the consideration that after the refrigerator car was placed, the icing was to be done by a third party, which had no contractual or other relation with the appellant. The record is clear that the icing was not customarily begun until a request was received from the shipper, which was responsible for the charges for this service, and which paid the freight charges for the bunker ice from Berlin to Snow Hill, and to which the car would be consigned by the Davis Ice & Coal Company after the icing. Nothing was done by the appellee, however, until the sales manager of the appellee called the proprietor of the Davis Ice & Coal Company at Berlin, about five o'clock in the afternoon of May 18th, and stated to him that there was a refrigerator car at his ice plant. The proprietor replied that he had left the plant two hours before and it was not there then. The proprietor went back to the ice plant and found

the refrigerator car there, and so telephoned the manager, who requested that the company should hold itself in readiness to ice the car, provided an arrangement could be made with the railway company to have the car brought down that night by a passenger train. The Pennsylvania Railway Company declined to violate its regulations for appellee, and the Davis Ice & Coal Company was then instructed by the manager of the appellee to hold the car subject to the appellee's instructions as to when to ice. The car remained at the plant until the following Monday, May 21st, when appellee directed the car to be iced, and, after this was done, the refrigerator car was consigned to appellee by the Davis Ice & Coal Company and carried to Snow Hill by the afternoon freight, and the car used on May 23rd for the shipment of strawberries by the appellee. All this was consistent with the uncontradicted statement of the proprietor of the ice plant that, after a refrigerator car was placed for icing by the appellant, it remained subject to the control of the shipper until it was used or released by the shipper.

The appellant had arranged for a limited number of refrigerator cars, which were to be furnished on application of shipper only to the extent available. In the absence of proof that any other refrigerator car was earlier available than the one which was furnished, or that there was undue delay in its being placed for icing at Berlin, or that it was through any default for which the appellant was chargeable that the car was not delivered to the appellee in Snow Hill on not later than the afternoon of May 18th, it cannot be assumed that the failure of the car to arrive in Snow Hill at the specified time was due to any neglect of the appellant. No evidence was introduced to show the length of time ordinarily required from the giving of the order for the car to its delivery at Berlin or at Snow Hill, or that a longer time was actually taken than was necessary for that purpose under the circumstances of this particular case. The testimony on the record is that a refrigerator car is not in condition for loading until twelve hours after icing, and within this period

the car would have been moved to Snow Hill on the afternoon of May 19th by the next freight, but this was not done because of instructions, which were given by the appellee to the ice company, to hold the car subject to the further direction of the appellee. There can be no tenable inference of a failure of a carrier to use due diligence in the delivery of a car, if the testimony does not show that more time was taken to perform the service requested than was usually required for a similar service under like conditions and circumstances.

The carrier of express matter is not bound to employ extraordinary diligence in procuring and forwarding a refrigerator car even where perishable goods are to be transported. It is not required to provide special service; and, in a request for a refrigerator car, the shipper must be understood to contemplate a performance in accordance with the ordinary course of the express company's business as conducted in conformity with its published tariffs, and with a degree of diligence which is fulfilled by furnishing an available refrigerator car as requested within a reasonable time, without unnecessary delay. The testimony did not disclose any departure from this standard of duty. While the question of negligence is usually one for the jury, yet, when the controlling facts are unmistakably established, admitted or undisputed, and they fail to show any unreasonable delay on the part of the defendant in furnishing the shipper with the service of a refrigerator car as contemplated by the published tariff of the carrier, the issue becomes one of law for the court and not of fact for the jury. The first prayer of the appellant was a demurrer to the legal sufficiency of the evidence to entitle the appellee to recover, and, for the reasons we have assigned, there was error in the trial court's refusal to grant this prayer. As this conclusion will cause the reversal of the judgment below without a new trial, it is unnecessary to pass on the other prayers and the numerous exceptions on the evidence.

*Judgment reversed, without a new trial, with
costs to the appellant.*